IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-022

Filing Date: April 27, 2010

Docket No. 31,491

PHILLIS IDEAL, JOSE E. and CLARA E.
GOMEZ LIVING TRUST, and J. FIDEL
CANDELARIA,

      Plaintiffs-Respondents,

v.

BURLINGTON RESOURCES OIL & GAS
COMPANY LP, successor in interest to
BURLINGTON RESOURCES OIL AND GAS
COMPANY,

      Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Timothy L. Garcia, District Judge

Holland & Hart, L.L.P.
Michael B. Campbell
Robert Jackson Sutphin, Jr.
Kristina Elena Martinez

Santa Fe, NM

for Petitioner

Peifer, Hanson & Mullins, P.A.
Cerianne L. Mullins
Matthew R. Hoyt
Charles R. Peifer
Robert E. Hanson
Albuquerque, NM

Eaves & Mendenhall, P.A.
John M. Eaves

Albuquerque, NM

Mary E. Walta, P.C.
Mary E. Walta
Santa Fe, NM

Sutin, Thayer & Browne, P.C.
Derek Vincent Larson
Albuquerque, NM

for Respondents

The Branch Law Firm
Turner W. Branch
Albuquerque, NM

Law Office of Karen Aubrey
Karen Aubrey
Santa Fe, NM

for Amicus Curiae

**OPINION**

**CHÁVEZ, Justice.**

{1}     Plaintiffs-Respondents (Plaintiffs) are royalty owners who brought a class action lawsuit claiming that Defendant-Petitioner (Burlington) has underpaid royalties by improperly deducting the costs and expenses associated with placing natural gas in a marketable condition.  The district court certified a class under Rule 1-023(B)(2) and (B)(3) NMRA, finding that "[t]he common pre-tailgate deduction issues and the 'marketable conditions rule' continue to dominate the overall case." We granted this interlocutory appeal to review the district court's certification of the class.  At the time we granted this appeal, we had undertaken a review of a similar class action case in *Davis v. Devon Energy Corp.*, 2009-NMSC-048, 147 N.M. 157, 218 P.3d 75.  The facts, legal theories, and arguments regarding class certification in this case are strikingly similar to those raised in *Davis*, 2009-NMSC-048, ¶ 1.  Applying *Davis*, we conclude that certification under Rule 1-023(B)(2) was appropriate.  *Davis*, 2009-NMSC-048, ¶ 2.  Class certification under Rule 1-023(B)(3) depends on the district court's conclusion that the marketable condition rule is implied in the contracts as a matter of law or on the parties' intent.  If implied by law *Davis* instructs that certification is appropriate. 2009-NMSC-048, ¶ 16.  In the latter situation, depending on the extent to which the court must construe the language of the contracts or weigh other extrinsic evidence of the parties' intent, class certification will be inappropriate if the individualized claims defeat the predominance requirement under Rule 1-023(B)(3).

2

**{2}** Burlington raises two additional issues not addressed in *Davis*: (1) whether Plaintiffs are precluded from re-litigating the issue of class certification because class certification was denied in the consolidated case of *San Juan 1990-A, LP v. El Paso Production Co.*, No. SF 95-1997 (D.N.M. 1997) (memo. op.) (hereinafter "1990-A litigation"); and (2) whether the district court erred in concluding that New Mexico law applies without undertaking a conflict of laws or choice of law analysis. We affirm the district court and hold that class certification in this case is not precluded by the 1990-A litigation because absent class members are not the same party for purposes of pre-certification decisions. We also affirm the district court's conclusion that New Mexico law applies to this case, and emphasize that while it is desirable, it is not necessary for the district court to detail its analysis when deciding whether New Mexico law applies to the case before it.

## I. CLASS CERTIFICATION UNDER RULES 1-023(B)(2) AND (B)(3)

## A. RULE 1-023(B)(2) CERTIFICATION WAS APPROPRIATE

**{3}** Burlington argues that certification under Rule 1-023(B)(2) is improper because the nature of the claims for declaratory and injunctive relief will require highly individualized inquiries and analyses of the various underlying instruments and, in any event, the final relief requested by Plaintiffs is predominately money damages. Burlington's arguments that certification is improper under Rule 1-023(B)(2) are the same arguments which were rejected in *Davis*, 2009-NMSC-048, ¶¶ 17-25. In *Davis*, we stated two principles that apply to the analysis in this case. First, the existence of individualized issues is irrelevant for certifying a Rule 1-023(B)(2) class if the district court finds that defendant "acted . . . or failed to perform a legal duty . . . on grounds generally applicable to all class members[.]" *See Davis*, 2009-NMSC-048, ¶ 17 (internal quotation marks and citation omitted). Second, as long as "declaratory or injunctive relief is sought as an integral part of the relief for the class, then Rule 23(b)(2) is applicable regardless of the presence or dominance of additional prayers for damages relief for class members." *Id.* ¶ 23 (internal quotation marks and citation omitted). The rationale for the second principle is that "Plaintiffs are equally concerned about correcting Defendants' allegedly improper past conduct, as well as their conduct in the future." *Id.* ¶ 25.

**{4}** The injunctive and declaratory relief sought by Plaintiffs in this case is no different than the relief sought and affirmed in *Davis*. *See id.* ¶¶ 16, 18, 25. Here the district judge found that Burlington acted or failed to perform a legal duty on grounds generally applicable to all class members when he stated that "[i]n taking deductions for pre-tailgate Processing [sic] costs from all royalty and overriding royalty owners, Burlington has acted on grounds generally applicable to the class." This finding was similar to the finding made by the district court in *Davis*. *See id.* ¶ 18 ("[T]he district court found that Defendants acted on grounds generally applicable to all class members by deducting certain costs uniformly in all royalty agreements, regardless of the language of those instruments."). Therefore, we affirm the certification of the class under Rule 1-023(B)(2).

3

## B.   RULE 1-023(B)(3) CERTIFICATION

**{5}**      To certify a class under Rule 1-023(B)(3), the court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]"   On appeal, Burlington argues that certification of the class under Rule 1-023(B)(3) was inappropriate because *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 858 P.2d 66 (1993) and *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 845 P.2d 1232 (1993), present "an insurmountable hurdle to Plaintiffs' ability to demonstrate 'predominance[,]'"and because the district court erred in certifying the class while believing it could divide the class into subclasses at a later time.  *Continental Potash* and *Mark V* together stand for the proposition that, when implying covenants in an agreement, courts must look at the express terms of the contract and the facts and circumstances surrounding the execution of the agreement to determine if the parties intended such an implied covenant to apply.  *Cont'l Potash*, 115 N.M. at 704, 858 P.2d at 80; *see also Mark V*, 114 N.M. at 781, 845 P.2d at 1235.  In addition, extrinsic evidence may be admitted to determine if there is an ambiguity in an agreement.  *See Mark V*, 114 N.M. at 781, 845 P.2d at 1235 ("New Mexico law . . . allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity.  . . .  The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear." (citations omitted)). Therefore, if an implied covenant depends on extrinsic evidence to demonstrate the parties' intent, individual contract issues may predominate over common questions and Rule 1-023(B)(3) certification may be inappropriate.

**{6}**      In *Davis*, we stated that *Continental Potash* and *Mark V* do not apply in every situation and held that "[i]n determining whether a covenant may be implied in a given contract, courts must first determine the legal theory supporting the implication of that promise."  *Davis*, 2009-NMSC-048, ¶ 28.  We held that courts must be clear whether they are "effectuating the parties' intentions by interpreting the written terms of an agreement . . . or . . . stating that a duty imposed by law creates an obligation[.]"  *Id.* ¶ 32.

**{7}**       From a review of the record in this case, we are not sure whether the district court concluded that the marketable condition rule applied as a matter of law, as did the district judge in *Davis*.  *See id.* ¶ 37 (basing the decision on the "district court's conclusion that the marketable condition rule has been incorporated in the existing duty to market").  In his letter opinion, the district judge, in discussing the common questions, noted that "[t]he common pre-tailgate deduction issues and the 'marketable conditions rule' continue to dominate the overall case."  Similarly, in his findings of facts and conclusions of law, the district judge noted that one of the issues common to all class members was "[w]hether the implied duty to place gas in marketable condition applies in New Mexico[.]"  If the district court relied on the marketable condition rule applying as a matter of law, then certifying a Rule 1-023(B)(3) class would have been appropriate; if not, *Continental Potash* would apply and Rule 1-023(B)(3) certification could be improper depending on whether common issues would continue to predominate.  *See Davis*, 2009-NMSC-048, ¶ 34 ("[T]he analysis set forth

4

in *Continental Potash* only applies to those promises that may be implied because the parties so intended them. Its analysis does not apply to covenants that impose legal duties upon contracting parties as a matter of law.").

**{8}**     We remand to the district court to resolve whether the marketable condition rule applies as a matter of law or because the parties may have intended it to apply. In the first case, certification was proper; in the second case, certification under Rule 1-023(B)(3) is dependent upon the extent to which the trial court determines that individualized proof is necessary.

## II.     PRECLUSION

**{9}**     Burlington argues that Plaintiffs should be precluded from litigating this matter as a class action because class certification was denied in the 1990-A litigation. The district court disagreed, stating that:

> The case of *San Juan 1990-A v. El Paso Prod. Co.,* No. D01010-CV-9501997, does not answer or control the issues presented in this case, or otherwise preclude the Plaintiffs from seeking class certification in this case, as the elements of collateral estoppel with regard to the *1990-A* class certification decision are not met in this case, and, in addition, applying preclusive effect to *1990-A* with regard to the class certification issues in this case would be fundamentally unfair.

Burlington contends that the district court erred because all the elements of issue preclusion are met in this case. *See Deflon v. Sawyers*, 2006-NMSC-025, ¶ 13, 139 N.M. 637, 137 P.3d 577 (stating that issue preclusion is synonymous with collateral estoppel). Issue preclusion bars re-litigation of the same issue if

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993); *see also Deflon v. Sawyers*, 2006-NMSC-025, ¶ 13, 139 N.M. 637, 137 P.3d 577 (discussing that the difference between res judicata and issue preclusion is that issue preclusion "does not require that both suits be based on the same cause of action" (internal quotation marks and citation omitted)). If any one element is not satisfied issue preclusion is not applicable. *See Reeves v. Wimberly*, 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct. App. 1988) ("In order to invoke collateral estoppel a party *must establish the existence of four elements*." (emphasis added)); *Deflon*, 2006-NMSC-025, ¶ 27 (reviewing only whether the parties were in privity and holding that "[b]ecause privity does not exist between the present Defendants and the

5

defendant in the federal lawsuit, res judicata does not bar Plaintiff's state court lawsuit"); *see also Sundance Mech. & Util. Corp. v. Atlas*, 118 N.M. 250, 254, 880 P.2d 861, 865 (1994) ("In order for the doctrine of collateral estoppel to preclude relitigation of an issue, the party to be estopped *must* have been a party or in privity with a party to the first proceeding." (emphasis added)).

**{10}**     Because the facts are not in dispute, we review de novo the question of issue preclusion. *Rosette, Inc. v. United States Dep't of the Interior*, 2007-NMCA-136, ¶ 31, 142 N.M. 717, 169 P.3d 704 ("When the facts are not in dispute, the preclusive effect of a prior judgment is a question of law reviewed de novo."). In this case, whether Plaintiffs were the same party or in privity with the plaintiffs in the 1990-A litigation is dispositive. *See Shovelin*, 115 N.M. at 297, 850 P.2d at 1000 ("[T]he party to be estopped was a party to the prior proceeding[.]"). Because a class was never certified in the 1990-A litigation, Plaintiffs could not be members of a previous class action. Therefore, the question we must answer is what preclusive effect should a pre-certification decision not to certify a class have on Plaintiffs, who did not argue for certification in the previous litigation?

## A.     ABSENT CLASS MEMBERS ARE NOT THE SAME PARTY FOR PURPOSES OF PRE-CERTIFICATION DECISIONS

**{11}**     Burlington relies on *Alvarez v. May Department Stores Co.,* 49 Cal. Rptr. 3d 892, 899-900 (Cal. Ct. App. 2006) for its argument that absent class members are bound by a denial of class certification in a prior case. In *Alvarez*, a division of the California Court of Appeals held that denial of class certification could be preclusive to absent class members. *Id.* at 900. Citing federal precedent, the court noted that the right to notice and an opportunity to opt out of the class is a post-certification decision and not available pre-certification. *Id.* However, *Alvarez* has been criticized by another division of the California Court of Appeals. *See Johnson v. GlaxoSmithKline, Inc.*, 83 Cal. Rptr. 3d 607, 618 n.8 (Cal. Ct. App. 2008) (questioning the rationale of *Alvarez*, but reversing on other grounds and "leav[ing] resolution of these important issues to another day"). We do not find *Alvarez* persuasive and adopt our own rule governing the preclusive effect of pre-certification decisions on absent class members. *See Richards v. Jefferson County, Ala.*, 517 U.S. 793, 797 (1996) ("State courts are generally free to develop their own rules for protecting against the relitigation of common issues or the piecemeal resolution of disputes.").

**{12}**     In rejecting the broad application of issue preclusion from *Alvarez*, we adopt a more limited approach regarding when pre-certification decisions will have a preclusive effect on absent class members. In *Taylor v. Sturgell*, 128 S. Ct. 2161, 2172-73 (2008), the United States Supreme Court rejected a broad theory of virtual representation, stating that virtual representation would apply to absent class members only when there has been a "properly conducted class action[]." *See also Johnson*, 83 Cal. Rptr. 3d at 618 n.8. The Court intended to, in limited situations, "delineate discrete exceptions" to the fundamental rule that a litigant is not bound by a judgment for which he or she was not a party. *Taylor*, 128 S. Ct. at 2175. The Court noted that in the class action context, Rule 23 implemented procedural

6

safeguards, but that "[a]n expansive doctrine of virtual representation . . . would authorize preclusion . . . shorn of the[se] protections[.]" *Id.* at 2176 (citation omitted). This sentiment has also been expressed in the Sixth Circuit, where it has been held that

> "[v]irtual representation's" intense case-by-case analysis is particularly undesirable in circumstances where its application would replace settled, rule-like procedures. In cases such as the instant case, these procedures already exist in the form of Rule 23. The application of the doctrine of virtual representation in these circumstances would create an end run around the limitations of Rule 23, and would as a result both avoid its limitations (which are explicitly grounded in due process) and replace a clear rule with an unruly standard. Such a result would defeat the purposes of both res judicata and Rule 23.

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 881-82 (6th Cir. 1997).

**{13}** To allow the plaintiffs to be bound by the denial of class certification before a properly conducted class action has even begun would expand the application of virtual representation beyond what the Supreme Court intended and beyond the point where we are willing to apply preclusive effect. Accordingly, we hold that virtual representation should be limited to apply to absent class members only in situations where the class has been properly certified and conducted. In addition, it does not apply to pre-certification decisions, including denial of class certification.

**B.     IT WOULD BE FUNDAMENTALLY UNFAIR TO PRECLUDE ABSENT CLASS MEMBERS BASED ON PRE-CERTIFICATION DECISIONS**

**{14}** The district court held that it would be fundamentally unfair to "apply[] preclusive effect to [the] *1990-A* [litigation] with regard to the class certification issues in this case[.]" We agree. In *Shovelin*, we held that even if the defendant had "met its burden and proved that the application of collateral estoppel was appropriate, the trial court could then determine whether [the plaintiff] was given a full and fair opportunity to litigate the issues[.]" 115 N.M. at 299, 850 P.2d at 1002. This determination of fairness is "within the competence of the trial court, and we review the trial court's determination for an abuse of discretion." *Id.* at 297, 850 P.2d at 1000; *see also Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153 ("An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case."); *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 ("When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." (internal quotation marks and citation omitted)).

**{15}** It would be unfair to preclude absent class members from pre-certification decisions because such preclusion would be inconsistent with due process guarantees. In, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985), the United States Supreme Court held

7

that when "a defendant is attempting to bind" an absent plaintiff,

> [t]he plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel . . . [and] requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.

(Citations omitted.) To preclude Plaintiffs in this case based on the denial of class certification in the 1990-A litigation would deny them these minimal due process rights. *See Eastham v. Pub. Employees' Ret. Ass'n Bd.,* 89 N.M. 399, 403, 553 P.2d 679, 683 (1976) ("The Advisory Committee described subdivision [Rule 23](c)(2) as not merely discretionary and added that the mandatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject.") (internal quotation marks and citation omitted); *see also Richards*, 517 U.S. at 797 (discussing due process concerns and res judicata, stating that "extreme applications of the doctrine of res judicata may be inconsistent with a federal right that is 'fundamental in character.'" (citation omitted)). Prior to a case being certified, absent class members are not offered a right to be heard, are given no notice, and are given no opportunity to opt out. To hold that these members are precluded from bringing their claims without affording them these rights would flout the due process concerns expressed in *Phillips Petroleum Co.* We affirm the district court's conclusion that the 1990-A litigation has no preclusive effect on Plaintiffs in the present litigation.

### III.   THE DISTRICT COURT IS NOT REQUIRED TO MAKE A RECORD OF ITS ANALYSIS OF CHOICE OF LAW AND CONFLICT OF LAW DECISIONS

**{16}**   The district court held that "[t]he law of New Mexico will control Plaintiffs' claims in this case, and there are no conflict of law or choice of law issues present in this case." We granted certiorari on the broad issue of whether choice of law and conflict of law principles preclude class certification. In both its brief in chief and its reply brief, Burlington focuses on the district court's duty to make a record of its analysis. Plaintiffs, however, specifically address whether New Mexico law applies. Although Burlington did not brief this issue, we granted certiorari on whether choice of law and conflict of law issues preclude certification and will address the district court's conclusion in holding that New Mexico law applies. *See State v. Javier M.*, 2001-NMSC-030, ¶ 10, 131 N.M. 1, 33 P.3d 1 (holding that the Court can address an issue not briefed if the issue is a "foundational issue which is integral to a complete and thorough analysis of the specific question presented in the petition for writ of certiorari"). We first address whether the district court must detail the analysis undertaken in resolving potential choice of law and conflict of law issues and hold that the district court is not required to do so. We then address whether the district court in this case was correct in concluding that New Mexico law applies and hold that there was no error in applying New Mexico law. *See Davis*, 2009-NMSC-048, ¶ 12 (stating that questions of law are reviewed

8

de novo).

**{17}** Burlington argues that the district court erred by not "engag[ing] in the requisite analysis to determine whether choice of law and conflict of law principles precluded certification" as required by *Ferrell v. Allstate Insurance Co.*, 2008-NMSC-042, ¶ 14, 144 N.M. 405, 188 P.3d 1156, and by summarily adopting Plaintiffs' contention that New Mexico law controlled. *Ferrell* involved a case that had been certified as a multi-state class, which included thirteen states. *Id.* ¶ 3. This Court held that "[c]lass actions involving plaintiffs from multiple states present particular challenges for district courts, and may 'implicate the predominance and superiority requirements . . . because of the combination of individual legal and factual issues that need to be determined.'" *Id.* ¶ 12 (citation omitted) (ellipsis in original). We held that "a certifying court must first determine which law will apply to the class so that it can then assess the predominance and superiority of the proposed class action." *Id.* ¶ 14. Burlington points to this language as requiring the district court to specify its analysis for determining choice of law issues.

**{18}** We believe that Burlington reads too much into *Ferrell*. Although the district court must conduct the disciplined analysis specified in *Ferrell*, and cannot certify a class without first determining which law will apply, *id.* ¶¶ 13-14, we do not require district courts to write opinions or the details of their analysis. *See Manning v. Atchison, T. & S. F. Ry. Co.*, 42 N.M. 381, 389, 79 P.2d 922, 927 (1938) (Brice, J., concurring) ("The district court is not required to write or file an opinion[.]"); *see also* Rule 1-058 NMRA (requiring district judges to enter order or judgment after announcement of a decision, not an opinion). Although it may be beneficial to the appellate courts and the litigants, there simply is no requirement that district judges set forth the details of their analysis. Indeed, in *Davis*, we also noted that while it is strongly recommended that the district court enter findings of fact and conclusions of law to aid in review, it is not compulsory. 2009-NMSC-048, ¶ 6. In this case, the district judge was presented with arguments and authority for why New Mexico law did or did not apply and satisfied the *Ferrell* requirement by determining at the certification stage that New Mexico law did apply. This is all that is required.

**{19}** In addition, a district court's decision will be upheld as long as the right result was reached, even if the court reached the decision for the wrong reason. *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 ("This Court may affirm a district court ruling on a ground not relied upon by the district court, [but] will not do so if reliance on the new ground would be unfair to appellant." (internal quotation marks and citation omitted) (alteration in original)).[1] It would be contrary to this principle if we were to reverse a district court's holding on an issue simply because the court did not provide the details of

---

[1]We do not address whether there would be any prejudice to Burlington, as none has been brought to our attention, and Burlington stated at oral arguments that even if the district court had performed the requisite analysis, application of New Mexico law may have been appropriate.

its analysis. Therefore, in light of this principle, we analyze whether the right result was reached by the district court when it concluded that New Mexico law applies.

## A. THE DISTRICT COURT PROPERLY CONCLUDED THAT NEW MEXICO LAW APPLIES

**{20}** Although Burlington argues only that the district court erred because it did not perform the necessary analysis, we would be remiss if we did not analyze the propriety of the district court's conclusion. *See Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 1999-NMSC-006, ¶ 20, 127 N.M. 1, 976 P.2d 1 ("While we could affirm a trial ruling which is right for the wrong reason, we may not do so in the absence of any substantial evidence supporting what would be the right reason." (citation omitted)). "A district court's choice to apply forum law is appropriate if (1) the choice to apply forum law is constitutional or (2) an application of the forum's choice-of-law rules leads to the selection of forum law." *Ferrell*, 2008-NMSC-042, ¶ 15.

**{21}** The district court reached the right result when it concluded that New Mexico law applies to this case. In *Ferrell*, we held that "the Restatement (Second) [Conflict of Laws (2001)] is a more appropriate approach for multi-state contract class actions" and rejected the more rigid Restatement (First) Conflict of Laws (2001). *Ferrell*, 2008-NMSC-042, ¶ 56. Under the Restatement (Second) Conflict of Laws there is a clear process for determining which law is applicable. If the parties have not elected applicable law, the district court must look to the contract at issue. *See* Restatement (Second) Conflict of Laws § 189, at 586 Introductory Note ("[I]t is considered possible to state with respect to each that, in the absence of an effective choice of law by the parties, a particular contract plays an especially important role in the determination of the state of the applicable law."). Contrary to Burlington's assertion, these contracts and the issue they cover sound in realty.

**{22}** We have previously held that these contracts transfer an interest in real property, and therefore the contracts at issue are properly analyzed according to Restatement (Second) Conflict of Laws § 190 (Contractual Duties Arising From Transfer Of Interests In Land).

> The contractual duties imposed upon the parties to a deed of transfer of an interest in land are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the land is situated unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Id.; see Uhden v. N.M. Oil Conservation Comm'n*, 112 N.M. 528, 530, 817 P.2d 721, 723 (1991) ("[A] grant or reservation of the underlying oil and gas, or royalty rights provided for in a mineral lease as commonly used in this state, is a grant or reservation of real property. Mineral royalty retained or reserved in a conveyance of land is itself real property." (internal quotation marks and citation omitted)); *Johnson v. Gray*, 75 N.M. 726, 728, 410 P.2d 948,

950 (1966) ("It is well settled in this jurisdiction that a grant or reservation of the underlying oil and gas, or royalty rights therein, is a grant or reservation of real property[.]"). Because the land is located in New Mexico, New Mexico law properly applies. *See Hart v. Oliver Farm Equip. Sales Co.*, 37 N.M. 267, 270, 21 P.2d 96, 98 (1933) ("The question of the priority of the mortgage lien as against plaintiff's attachment lien is to be determined . . . by the law of New Mexico, by virtue of its being not only the forum, but also the place where the property was situated at the time of the levy of attachment."). We find the comments in the Restatement (Second) Conflict of Laws § 189 cmt. c to be particularly enlightening in describing the underlying rationale for this decision:

> Several factors serve to explain the importance attributed by the rule to the location of the land. The state where the land is situated will have a natural interest in transactions affecting it, particularly in view of the fact that land by its nature is immovable. Also, since in the situations covered by the rule the land constitutes the subject matter of the contract, it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the land is situated would be applied to determine many of the issues arising under the contract. The rule furthers the choice-of-law values of certainty, predictability and uniformity of result and, since the state where the land is situated will be readily ascertainable, of ease in the determination of the applicable law.

*Id.*

**{23}** We also hold that the decision to apply New Mexico law was constitutional because New Mexico has significant contacts creating state interest and application of New Mexico law is neither arbitrary nor fundamentally unfair. *Ferrell*, 2008-NMSC-042, ¶ 15. As previously discussed, New Mexico clearly has significant contacts regarding these leases creating state interest in this dispute as the land is located in New Mexico, the production occurs in New Mexico, and the leases seek to convey an interest in real property in New Mexico. In addition, nothing indicates that it would be fundamentally unfair to apply New Mexico law. Therefore, we affirm the conclusion that New Mexico law will control Plaintiffs' case.

**{24}** Burlington's assertion that this is a contract case, as opposed to a case dealing with realty, rests solely on the case of *Team Bank v. Meridian Oil Inc.*, 118 N.M. 147, 149, 879 P.2d 779, 781 (1994). *Team Bank* involved a breach of contract claim resulting from underpayment of royalties. *Id.* at 148, 879 P.2d at 780. In that case, this Court held that the object of the suit was for breach of contract, and therefore "venue was not mandatory in New Mexico under [NMSA 1978,] Section 38-3-1(D)(1) [(as amended through 1988)]." *Id.* at 149, 879 P.2d at 781. However, *Team Bank* can be distinguished and we do not find it persuasive. *Team Bank* involved an issue of improper venue and did not discuss any choice of law or conflict of law issues. In addition, *Team Bank* involved only breach of contract claims and did not involve the assertion that implied covenants existed which would

potentially affect the plaintiffs' underlying royalty interests and the manner in which those implied covenants would affect the agreements. *See id.* ("[I]t is for breach of contract to determine whether the correct amount of royalties has been paid."); *see also supra* Part I(B) (discussing the manner in which the marketable condition rule is implied will impact the review by the court of the contracts involved). Other than the bald assertion that *Team Bank* controls, Burlington does not refute the authority cited by Plaintiffs. We hold that New Mexico law properly applies to the claims made in this case.

## IV.  CONCLUSION

**{25}**   We affirm the district court's conclusions not to preclude Plaintiffs' claims based on the 1990-A litigation and to apply New Mexico law to Plaintiffs' claims. We also affirm the certification of the class under Rule 1-023(B)(2). We remand to the district court the Rule 1-023(B)(3) certification issue to determine whether the marketable condition rule applies as a matter of law or because of the parties' intent.

**{26}   IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**FREDDIE JOSEPH ROMERO, Judge**
**Sitting by Designation**

**Topic Index for *Ideal v. Burlington Resources*, Docket No. 31,491**

| CP | CIVIL PROCEDURE |
|---|---|
| CP-CA | Class Actions |
| CP-CE | Collateral Estoppel |
|  | See Also, CIVIL PROCEDURE, Estoppel |
| CP-CL | Conflict of Laws |
|  | See Also, JURISDICTION, Choice of Law |

| | |
|---|---|
| CP-RJ | Res Judicata |
| | |
| **CW** | **CONFLICT OF LAWS** |
| | See JURISDICTION, Choice of Law |
| | |
| **CN** | **CONTRACTS** |
| CN-CH | Choice of Law |
| CN-IT | Intent |
| | |
| **LP** | **LEASES** |
| | See: PROPERTY Leases and Leaseholds |
| | See also: CONTRACTS Lease; or NATURAL RESOURCES Leases |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-LE | Leases |
| NR-OG | Oil and Gas |
| NR-RO | Royalties |
| | |
| **OG** | **OIL AND GAS** |
| | See: NATURAL RESOURCES |