This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36749**

**BEVERLY RODRIGUEZ,**

Plaintiff-Appellant,

**v.**

**JEFFREY SMITH and NEW MEXICO STATE POLICE, a Division of NEW MEXICO DEPARTMENT OF PUBLIC SAFETY,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

The Baker Law Group
Jeffrey L. Baker
Renni Zifferblatt
Albuquerque, NM

for Appellant

Wiggins, Williams & Wiggins, P.C.
Patricia G. Williams
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Plaintiff Beverly Rodriguez appeals from the district court's grant of summary judgment in favor of Defendants Jeffrey Smith, a New Mexico State Police (NMSP)

agent, and the NMSP.[1] Specifically, Plaintiff challenges the propriety of the district court's reliance on facts found in a prior, federal court proceeding to collaterally estop her district court claims of false arrest, false imprisonment, and malicious abuse of process against Defendant. Concluding that part of the district court's application of collateral estoppel was proper, we affirm in part and reverse in part.

## BACKGROUND

**{2}**    Plaintiff sued Defendant in federal court, pursuant to 42 U.S.C. § 1983 (2018), alleging violations of her rights under the Fourth and Fourteenth Amendments of the United States Constitution and simultaneously sued Defendant in state district court, alleging false arrest, false imprisonment, malicious abuse of process, and other statutory violations[2] under state law.

**{3}**    Plaintiff's claims are based on the following facts, as found by the federal court. Importantly, Plaintiff does not dispute the basic factual framework reflected in the federal court's ruling. Defendant, an agent with the NMSP, began a criminal investigation seeking evidence of fraud, embezzlement, and larceny in the Cuba Independent School District, for which Plaintiff worked. Defendant reported to officials his suspicion that fraud had been committed by certain bus contractors, one of whom was Plaintiff's uncle. As part of his investigation, Defendant interviewed Plaintiff about the suspected fraud. During the interview, Plaintiff stated that she had bought the metal disability ramps that were in her front yard at a school district auction years earlier. After the interview, Defendant began investigating whether the ramps were stolen. He prepared an affidavit for a warrant to arrest Plaintiff. A deputy district attorney approved the affidavit, and Defendant swore it before a magistrate judge. Defendant also prepared a criminal complaint charging Plaintiff with larceny; it too was signed by the magistrate judge. After a deputy district attorney reviewed and approved it, Defendant then swore an affidavit before a district court judge for a warrant to search Plaintiff's property.

**{4}**    Defendant and another state police agent served the warrants on Plaintiff at her home. Defendant discussed the case at length there with Plaintiff and her husband. Defendant told them, in essence, that it was not her, but rather the bus contractors, who were the target of the investigation. Defendant insinuated that unless Plaintiff incriminated her uncle, the felony charge against her would be pursued. Plaintiff was arrested and transported to a detention center. At Defendant's request, the state Department of Transportation removed the ramps from Plaintiff's yard. Later, at a grand jury proceeding, Defendant testified regarding the criminal complaint against Plaintiff. The grand jury refused to issue an indictment and no true bill was returned.

---

1Plaintiff's claim against the NMSP was based on a theory of respondeat superior for the actions of Defendant. We refer to both Officer Smith and NMSP as Defendant throughout this opinion.

2On appeal, Plaintiff does not argue that the district court erred in granting summary judgment on her "statutory violations" claim. The question of the propriety of that grant is therefore not before us. *See Worthey v. Sedillo Title Guar., Inc.*, 1973-NMSC-072, ¶ 20, 85 N.M. 339, 512 P.2d 667.

**{5}** While Plaintiff's state court case was pending, Defendant filed a motion for summary judgment in the federal case. The federal court granted Defendant's motion based on the defense of qualified immunity. In granting the motion, the court found that: (1) Defendant did not knowingly make false statements or act with reckless disregard for the truth in obtaining the search and arrest warrants; (2) it would not have been evident to a reasonably competent officer that the affidavits lacked probable cause; and (3) the arrest warrant was supported by probable cause as a matter of fact and law.

**{6}** In the meantime, Plaintiff added a new claim to her federal complaint: malicious prosecution under federal law. In response, Defendant filed a motion for summary judgment on the malicious prosecution claim. In granting the motion, the court stated that "the existence of probable cause is fatal to [Plaintiff's] claim" but nonetheless discussed the malice element of the claim and found that Plaintiff failed to show malice. The federal court then dismissed Plaintiff's amended complaint.

**{7}** After the federal court granted Defendant's first motion for summary judgment, Defendant moved for summary judgment in state district court based on the application of collateral estoppel. At the hearing on the motion, the federal court's second order was presented to the district court without objection. The district court granted summary judgment, reasoning that "the facts 'found' by [the federal court] . . . are entitled to preclusive effect" and that "[Defendant has] made a prima facie showing that summary judgment is proper and [Plaintiff] has not shown specific evidentiary facts in the form of admissible evidence that give rise to a genuine issue of material fact requiring a trial on the merits." This appeal followed.

## DISCUSSION

### I. Standard of Review

**{8}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Where issues on appeal involve only questions of law, we review those questions de novo. *Id.*

**{9}** Our decision turns on whether the district court correctly applied collateral estoppel to Plaintiff's state law claims. "In general, we review a decision by the district court to apply or not apply the doctrine of collateral estoppel for an abuse of discretion." *Bank of N.Y. v. Romero*, 2016-NMCA-091, ¶ 23, 382 P.3d 991 (alteration, internal quotation marks, and citation omitted). However, when, as here, the facts are not in dispute, "the preclusive effect of a prior judgment is a question of law reviewed de novo." *Rosette, Inc. v. U.S. Dep't of the Interior*, 2007-NMCA-136, ¶ 31, 142 N.M. 717, 169 P.3d 704. Thus, we review the district court's grant of summary judgment, which was based on its application of collateral estoppel, de novo.

### II. Principles of Collateral Estoppel

**{10}**    Collateral estoppel, or to use a more descriptive term, "issue preclusion[,]" "prevents a party from re[]litigating ultimate facts or issues actually and necessarily decided in a prior suit." *Romero*, 2016-NMCA-091, ¶ 23 (internal quotation marks and citation omitted). Issue preclusion is available even when, as here, the issue is submitted and determined in the prior proceeding on a motion for summary judgment. Restatement (Second) of Judgments § 27 cmt. d (1982). Likewise, a party in state court may be precluded from relitigating an issue previously litigated in federal court. *See, e.g., Edwards v. First Fed. Sav. & Loan Ass'n of Clovis*, 1985-NMCA-015, ¶ 33, 102 N.M. 396, 696 P.2d 484 ("It would be unthinkable to suggest that state courts should be free to disregard the judgments of federal courts[.]" (internal quotation marks and citation omitted)); *see also* 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4468 (2d ed. 2019).

**{11}**    Collateral estoppel is available only if the party seeking its application demonstrates that

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Ideal v. Burlington Res. Oil & Gas Co. LP*, 2010-NMSC-022, ¶ 9, 148 N.M. 228, 233 P.3d 362 (internal quotation marks and citation omitted).

**{12}**    An issue is not "necessarily determined" in the prior litigation, however, "if a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 n.1 (10th Cir. 2014) (quoting Restatement (Second) of Judgments § 27 cmt. i); *accord Manlove v. Sullivan*, 1989-NMSC-029, ¶ 14, 108 N.M. 471, 775 P.2d 237. One reason for the rule that preclusion is unavailable when a prior judgment rests on alternative, independent grounds is that "a determination in the alternative may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dicta." Restatement (Second) of Judgments § 27 cmt. i.

**{13}**    Even if the party seeking preclusion establishes that the elements of collateral estoppel are present, an exception may apply; that is, a trial court "may determine that its application would be fundamentally unfair and would not further the aim of the doctrine, which is to prevent endless relitigation of issues." *Silva v. State*, 1987-NMSC-107, ¶¶ 7, 12, 106 N.M. 472, 745 P.2d 380. "Fundamental fairness requires that the party against whom estoppel is asserted had a full and fair opportunity to litigate." *Id.* ¶ 7. The burden is on that party to prove that it was deprived of this full and fair opportunity. *See Larsen v. Farmington Mun. Sch.*, 2010-NMCA-094, ¶ 10, 148 N.M. 926, 242 P.3d 493.

**{14}** In this case, Plaintiff gives three main reasons that the district court's application of collateral estoppel was unfair. She first points to the difference between the legal standards associated with her federal law claims and those associated with her state law claims. Plaintiff argues that the federal law claims, which require proof of intent, are more burdensome to prove than the state law claims, which she characterizes as negligence-based. Second, Plaintiff points out that the qualified immunity defense, which precluded Defendant's liability under the federal law claims, is not a defense to her state law claims. Lastly, Plaintiff notes that the federal and state summary judgment standards differ. On this point, Plaintiff seems to argue that summary judgment to dispose of cases is more favored in federal courts than in our state courts and so, in accordance with New Mexico's policy preference that cases be decided on the merits, she should be allowed a trial on the merits of her state law claims.

## III.	Application of Collateral Estoppel

**{15}** We first consider whether the elements of collateral estoppel, as applied to the facts of this case, are established.

### A.	Plaintiff Was a Party In the Prior Proceeding, and the Causes of Action In the Two Proceedings Are Different

**{16}** The first two collateral estoppel elements are present. Plaintiff was obviously a party to the prior, federal proceeding, and the causes of action before the state court—false arrest, false imprisonment, and malicious abuse of process—are different from those before the federal court: violations of constitutional rights under 42 U.S.C. § 1983.

### B.	The Probable Cause Issue Was Actually Litigated and Necessarily Determined In the Prior Proceeding

**{17}** The second two collateral estoppel elements are likewise present. Plaintiff raised the issue of Defendant's lack of probable cause for her arrest in her response to Defendant's first federal court summary judgment motion. Plaintiff argued that "the affidavit for the arrest warrant did not establish probable cause[.]" The federal court considered the matter and resolved it in Defendant's favor, as stated in its first order: "[Plaintiff] failed to establish a constitutional violation for lack of probable cause on the face of the arrest warrant affidavit." Later, in response to Defendant's second federal court motion for summary judgment and presumably in an effort to alter the probable cause analysis, Plaintiff submitted proposed factual corrections. Taking the new information into account, the federal court reaffirmed its determination that Plaintiff's arrest was based on probable cause. Based on this record, we conclude that the probable cause issue was actually litigated and necessarily determined in the prior proceeding. *See* Restatement (Second) of Judgments § 27 cmt. d ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated.").

**{18}** Resolution of the probable cause issue in Defendant's favor disposes of Plaintiff's claims of false arrest and false imprisonment. Under our case law, the existence of probable cause squarely defeats those claims. *See, e.g.*, *Benavidez v. Shutiva*, 2015-NMCA-065, ¶ 12, 350 P.3d 1234 ("When probable cause is present, a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." (internal quotation marks and citation omitted)).

**{19}** In sum, each of the collateral estoppel elements, as applied to Plaintiff's false arrest and false imprisonment claims, is present. Before turning to whether the "full and fair opportunity" exception applies in the context of those claims, we consider whether the issue of malice was likewise actually litigated and necessarily determined by the federal court.

**C.    The Malice Issue Was Actually Litigated but Not Necessarily Determined In the Prior Proceeding**

**{20}** Whether Defendant acted with malice in causing Plaintiff's continued confinement or prosecution was at issue in the federal court proceeding. Plaintiff raised this issue in bringing a claim for malicious prosecution under federal law. The federal court analyzed Plaintiff's claim in relation to what the court considered essential elements of malicious prosecution, including the element that "the defendant acted with malice[.]" The court concluded that Plaintiff had "not shown evidence of [Defendant's] malicious intent." Having been raised, submitted, and determined, the malice issue was actually litigated.

**{21}** However, the malice issue was not necessarily determined. The federal court's second order stated that Plaintiff failed to make two showings, each one directly related to one of the malicious prosecution elements. The court concluded first that Plaintiff failed to show that "there was no probable cause to support the original arrest, continued confinement, or prosecution[.]" The court characterized this failure as "fatal" to the malicious prosecution claim. The court nevertheless said it would "briefly analyze" the issue of whether Defendant acted with malice. The court concluded that Plaintiff failed to make that showing.

**{22}** In other words, the federal court's second grant of summary judgment was based on both its resolution of the probable cause issue and its resolution of the malice issue. Together, they are "two issues, either of which standing independently would be sufficient to support the result[.]" *Stan Lee Media, Inc.*, 774 F.3d at 1297 n.1. The federal court's judgment with respect to the malice issue, therefore, was not necessarily determined. *See id.* Having not satisfied all the requisites for collateral estoppel, the no-malice determination should not be given preclusive effect and is unavailable in the context of Plaintiff's state law malicious abuse of process claim.

**{23}** Malicious abuse of process under our state law consists of the following elements: "(1) the use of process in a judicial proceeding that would be improper in the

regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19. An improper use of process, as referenced in the first element, "may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process." *Id.* (alteration, internal quotation marks, and citation omitted). As such, the claim is not disposed of, because the elements associated with it can be established despite a showing of probable cause.

**{24}** Given that the determinations required for Plaintiff to succeed on her malicious abuse of process claim extend beyond those necessary to dispose of her federal law claims, the district court erred insofar as it collaterally estopped Plaintiff from litigating the malicious abuse of process claim. *See Deflon v. Sawyers*, 2006-NMSC-025, ¶¶ 16, 27, 139 N.M. 637, 137 P.3d 577 (stating that collateral estoppel does not apply when the findings required to succeed in a subsequent proceeding differ from those required to succeed on a claim in a prior proceeding).

**D.      Plaintiff Had a Full and Fair Opportunity to Litigate Her Initial Claims In the Prior Proceeding**

**{25}** Having determined that the collateral estoppel elements, as applied to the probable cause issue at the center of the false arrest and false imprisonment claims, are present, we now consider whether Plaintiff was afforded a full and fair opportunity to litigate the issue.

**{26}** When deciding whether a party had a "full and fair opportunity to litigate" an issue, a trial court is to weigh "countervailing equities[,]" *Silva*, 1987-NMSC-107, ¶ 12, for example, "whether the non-movant had the incentive to vigorously litigate the prior action," *Rex, Inc. v. Manufactured Hous. Comm.*, 1995-NMSC-023, ¶ 14, 119 N.M. 500, 892 P.2d 947. Other considerations are "whether procedural differences between the two actions, such as representation by counsel, presentation of evidence, questioning of witnesses, and appellate review, would make preclusion unfair" and "whether policy considerations exist to deny any preclusive effect." *Id.*

**{27}** Plaintiff fails to show how she lacked the incentive to vigorously litigate the federal court action. *See id.* That is, she highlights no specific deficiency relative to this consideration, and the record reveals none. On the contrary, Plaintiff's argument tends to prove that she had an incentive to vigorously litigate. Plaintiff cites as an inequity the difficulty in proving the federal law claims relative to proving the state law claims. Assuming that proving the federal law claims is indeed more difficult, it would stand to reason that, in an effort to succeed in the federal court proceeding, Plaintiff would have the incentive to bring forward every piece of evidence available to prove that Defendant acted without probable cause. Given this inference and the lack of evidence to the contrary, we conclude that Plaintiff's incentive to vigorously litigate the prior action was robust enough to satisfy this consideration's standard.

**{28}** We consider next whether procedural differences between the two actions would make preclusion unfair. *See id.* Here, too, Plaintiff highlights no deficiency of the kind expressly contemplated in *Rex*—"representation by counsel, presentation of evidence, questioning of witnesses, and appellate review[,]" *id.*—and discussed at length in cases like *Shovelin v. Central N.M. Electric Cooperative, Inc.*, 1993-NMSC-015, ¶¶ 17, 19-20, 115 N.M. 293, 850 P.2d 996 (observing that the procedural and evidentiary rules applicable in unemployment compensation cases differ from those followed in district courts and also that the qualifications of adjudicators in each of those tribunals differ), and *Mascarenas v. City of Albuquerque*, 2012-NMCA-031, ¶ 36, 274 P.3d 781 (considering specific characteristics of the prior proceeding, such as counsel representation, allowance for witness testimony, and qualifications of the hearing officer). The record on appeal contains no indication of procedural differences between the proceedings that would make preclusion unfair. We therefore assume there were none. *See Reeves v. Wimberly*, 1998-NMCA-038, ¶ 21, 107 N.M. 231, 755 P.2d 75.

**{29}** Finally, Plaintiff obliquely argues that the heightened burden of persuasion she had to meet to prove her § 1983 claim, coupled with the federal courts' very different approach to summary judgment adjudication should move the balance of fairness in her favor. *See* Restatement (Second) of Judgments § 28 cmt. (4) (1982) (noting that relitigation of an issue in a subsequent action may not be precluded if "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action"). We acknowledge the differences Plaintiff points to, but conclude that they did not play an unfair role in the federal court's determination that probable cause supported the arrest and search warrants, which Defendant relies on for his defense. Plaintiff does not argue that the basic historical facts supporting the warrants are inaccurate or flawed enough to bring into question the validity of the warrants. As such, the differences between the federal and state systems are irrelevant to our inquiry. Accordingly, it was proper for the district court to apply collateral estoppel to preclude the litigation of Plaintiff's false arrest and false imprisonment claims, since those claims can be defeated by a probable cause determination in Defendant's favor, and since the probable cause issue was actually litigated and necessarily determined in the prior proceeding.

**{30}** Conversely, the malice issue was not necessarily determined in the prior proceeding, and so the requisites for collateral estoppel as applied to that issue have not been met. Accordingly, preclusion is not available for the federal court's no-malice determination. Therefore, it was improper for the district court to apply collateral estoppel to preclude the litigation of Plaintiff's malicious abuse of process claim.

## CONCLUSION

**{31}** We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**{32}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**RICHARD C. BOSSON, Judge Pro Tempore**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**