## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number:  2014-NMCA-036**

**Filing Date:  January 15, 2014**

**Docket No. 32,128**

**STATE OF NEW MEXICO ex rel.**
**DAVID PETERSON,**

>     **Qui Tam Plaintiff-Appellant,**

**v.**

**ARAMARK CORRECTIONAL SERVICES, LLC,**

>     **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Raymond Z. Ortiz, District Judge**

Streubel Kochersberger Mortimer LLC
Donald F. Kochersberger III
Albuquerque, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Andrew G. Schultz
Albuquerque, NM

for Appellee

## OPINION

**SUTIN, Judge.**

**{1}**     Qui Tam Plaintiff David Peterson (Plaintiff), on behalf of the State, sued Aramark Correctional Services, LLC (Aramark) in May 2010, claiming that Aramark violated the Fraud Against Taxpayers Act (the Act), NMSA 1978, §§ 44-9-1 to -14 (2007).  *See* § 44-9-5(A) (stating that a person bringing an action under the Act, on behalf of the State, shall be referred to as the qui tam plaintiff).  The lawsuit was based on allegations that Aramark, who was under contract to provide meals for inmates in the Western New Mexico Correctional

Facility (the Facility) of the New Mexico Department of Corrections (the Department), failed and refused to comply with certain provisions of the contract and then sought payment under the contract based on false representations of compliance. Plaintiff filed the lawsuit in an effort "to recoup the moneys wrongfully paid to Aramark."

**{2}** Aramark moved for summary judgment claiming that a lawsuit brought by Plaintiff in 2008 barred the present action on the bases of claim preclusion and issue preclusion.[1] Separately, Aramark moved to dismiss Plaintiff's claims that were based on conduct that occurred prior to the enactment of the Act so as to comply with the prohibition against the application of ex post facto laws. The district court granted summary judgment in favor of Aramark on the bases of claim and issue preclusion, and it also granted Aramark's motion to dismiss Plaintiff's claims for conduct that occurred before the enactment of the Act. Plaintiff appeals.

**{3}** We reverse the court's summary judgment, holding that the doctrines of claim preclusion and issue preclusion do not apply in this case. We affirm the court's dismissal of claims that were based on Aramark's conduct that occurred prior to the enactment of the Act.

## BACKGROUND

### The Act

**{4}** The Act "tracks closely the longstanding federal False Claims Act[.]" *State ex rel. Foy v. Austin Capital Mgmt., Ltd.*, 2013-NMCA-043, ¶ 7, 297 P.3d 357, *cert. granted*, 2013-NMCERT-003, 300 P.3d 1181. In relevant part, Section 44-9-3 of the Act provides that:

> A.  A person shall not:
>
> (1)  knowingly present, or cause to be presented, to an employee, officer[,] or agent of the [S]tate or to a contractor, grantee[,] or other recipient of state funds a false or fraudulent claim for payment or approval;
>
> (2)  knowingly make or use, or cause to be made or used, a false misleading[,] or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim[.]

---

[1]  The district court proceedings and the briefing in this case occurred prior to our recognition in *Pielhau v. State Farm Mutual Automobile Insurance Co.*, 2013-NMCA-112, ¶ 7 n.1, __ P.3d __, that the term "res judicata" encompasses both claim and issue preclusion. In accord with *Pielhau*, in this Opinion we substitute the terms "claim preclusion" and "issue preclusion" for the terms "res judicata" and "collateral estoppel." *See* 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4402, ch. 13 (2d ed. 2002).

Section 44-9-3(A)(1), (2). The Act provides that "[a] person may bring a civil action for a violation of [the Act's prohibitions] on behalf of the person and the [S]tate[,]" which action "shall be brought in the name of the [S]tate." Section 44-9-5(A). When a complaint is filed by a qui tam plaintiff, the attorney general may intervene on behalf of the State and take over the action. *See* § 44-9-5(C). If the attorney general declines to take over, however, the qui tam plaintiff may proceed with the action. *See* § 44-9-5(D)(2). The court "may permit the attorney general to intervene at a later date upon a showing of good cause." Section 44-9-6(F).

**{5}**     A person who violates the Act's prohibitions is liable for "three times the amount of damages sustained by the [S]tate because of the violation[,] . . . a civil penalty[,] . . . the costs of a civil action brought to recover damages or penalties[,] and . . . reasonable attorney fees[.]" Section 44-9-3(C). Further, "[i]f the [S]tate does not proceed with an action brought by a qui tam plaintiff and the [S]tate prevails in the action, the qui tam plaintiff shall receive an amount that is not less than twenty-five percent or more than thirty percent of the proceeds of the action or settlement[.]" Section 44-9-7(B). The remaining proceeds collected in an action or a settlement must be paid to the State. Section 44-9-7(E).

**The Parties**

**{6}**     Plaintiff is an inmate at the Facility, in the custody and care of the Department. Aramark entered into a contract (the contract) with the State of New Mexico in 2004 to provide food services for a number of adult corrections facilities in New Mexico including the Facility where Plaintiff resides.

**The Contract Between Aramark and the State**

**{7}**     Pursuant to the contract, Aramark had an obligation to provide meals to inmates that were comprised of ingredients of a specific quality and met specific nutritional content requirements. Among the provisions of the contract was a requirement that Aramark provide food for religious diets for those inmates who had been approved by the Department to receive a religious diet. Also, Aramark was required to provide the State with monthly status reports that were to include a detailed invoice reflecting the number and type of meals served and the cost associated therewith. It was also required, bi-weekly, to submit a bill to the State to generate payment for meal services that it had provided.

**Plaintiff's 2008 Lawsuit**

**{8}**     At the outset, we note that a 2002 lawsuit filed by Plaintiff is not relevant to the issues in this appeal; thus, although it is mentioned in the record, it will not be discussed further in this Opinion.

**{9}**     In 2008 Plaintiff, pro se, filed a lawsuit against Aramark, among others, claiming breach of duty, fraud, unfair practices, and violation of the New Mexico Religious Freedom

3

Restoration Act, NMSA 1978, §§ 28-22-1 to -5 (2000), and seeking actual and punitive damages. Plaintiff's overarching claim in the 2008 lawsuit was that although he had been approved to receive a religious vegetarian diet, the defendants "refused to provide [him] with a nutritionally adequate vegetarian diet."

**{10}** In relevant part, in the 2008 lawsuit, Plaintiff alleged that the "[c]ontract and prison policy require the [d]efendant [to] provide 3400 calories and 60 grams of high biological protein per day[,]" but "[t]he [d]efendants provide . . . Plaintiff with between 1400 and 1900 calories per day[,]" and they provide Plaintiff "with between zero and [thirty] grams of high biological protein per day." Plaintiff also stated that "[t]he . . . [Department], the prison[,] and the taxpayers have paid the [d]efendants to provide . . . Plaintiff with a nutritionally adequate diet that complies with prison policy, state law, and the contract[.]" Yet, he alleged that "[t]he [d]efendants do not provide sufficient fresh fruit and fresh [vegetables] for a nutritionally adequate diet[,]" and they "proffered a vegetarian diet menu" but they "falsely claim[ed]" that beans or legumes and peanut butter are high biological protein food sources. He further alleged that "[t]he [d]efendants provide a product that claims to be scrambled egg mix[, but which] does not comply with the [New Mexico] egg grading act nor the contract."

**{11}** Based on the foregoing, Plaintiff claimed that the defendants "restrict [his] free exercise of religion by denying him a nutritionally adequate vegetarian diet"; "intentionally misappropriated and [took away] . . . food[] that belongs to . . . Plaintiff and others by means of fraudulent conduct, practices[,] and representations"; "falsely made parts of any writing purporting to have legal efficacy with intent to injure and defraud . . . Plaintiff"; and "made false material statements upon public vouchers and invoices supporting public vouchers with intent that the vouchers and invoices shall be relied upon for the expenditure of public money." Plaintiff claimed that he "was and is being harmed by these actions of the [d]efendants" in that he "is hungry all the time[,] . . . is chronically malnourished[,] . . . is caused to have his family and friends support him with food money contrary to state law[, and] . . . is prohibited from freely exercising his religious beliefs."

**{12}** The district court granted summary judgment in favor of the defendants in Plaintiff's 2008 lawsuit. Based on the undisputed facts before it, the court found that Plaintiff failed "to demonstrate that the defendants . . . breached any duty owed to . . . [P]laintiff or that he . . . suffered any damages as a result of their actions or failures[.]" The court also found that Plaintiff "failed to show that the defendants . . . made any untrue representations of fact to . . . [P]laintiff," and that Plaintiff failed "to show that the defendants . . . restricted [his] right to exercise his religion." As such, the court concluded that Plaintiff's claims lacked merit. The court also concluded that, as a private citizen, Plaintiff lacked standing to prosecute any violations of the New Mexico Criminal Code; therefore, his claims alleging criminal activity lacked merit.

**{13}** Plaintiff appealed the court's summary judgment, and this Court issued a memorandum opinion affirming the judgment. *See Peterson v. Neubauer*, No. 30,235, 2010 WL 4621717, at *1 (N.M. Ct. App. July 28, 2010). In relevant part, the memorandum

4

opinion stated the following.

> In his docketing statement, Plaintiff contends that he was entitled to summary judgment on his claims of making or permitting false public vouchers . . . . In our notice of proposed summary disposition, we proposed to disagree because [that claim[] . . . involve[s] criminal allegations, and Plaintiff is not authorized to prosecute criminal violations.
>
> . . . .
>
> Finally, in our notice, we proposed to hold that Plaintiff was not entitled to prevail on his claim to restrain the payment or receipt of public money pursuant to NMSA 1978, Section 30-23-4 (1963) because Plaintiff's complaint fails to request injunctive relief and the governmental agency that is allegedly wrongfully paying money to Defendants is not even named as a defendant. . . . Plaintiff fails to point out any errors in our analysis except to contend he has a right to bring this action based upon the . . . Act[.] However, Plaintiff has failed to state a claim under that statute because he has failed to bring any action in the name of the [S]tate.

*Id.* at *1-2 (citations omitted).

**The Present Lawsuit**

{14}    Plaintiff, pro se, filed the present lawsuit in May 2010. In May 2011, having acquired counsel to represent him in this matter, Plaintiff filed an amended complaint followed by a second amended complaint on behalf of the State for violation of the Act. The crux of Plaintiff's claims in the present lawsuit was that Aramark "consistently, and knowingly, failed and refused to provide the specific nutritional content and food quality specified in the [contract,]" and, notwithstanding its failure to comply with the contract, Aramark "repeatedly requested payment from the State for its non-conforming products and services." Thus, according to Plaintiff's complaint, "[t]he State has paid many millions of dollars to Aramark on [the basis of Aramark's] false claims." By bringing the present lawsuit, Plaintiff sought "to recoup the moneys wrongfully paid to Aramark."

{15}    In the second amended complaint, Plaintiff alleged that Aramark failed to comply with the contract's requirements pertaining to the quality of food ingredients and nutritional content of the meals that it provides to inmates. For instance, Plaintiff alleged that the contract requires Aramark to provide USDA Grade AA (large) eggs and to provide at least fifteen percent of all calories from protein; however, "the eggs provided by Aramark are not USDA Grade AA (large)[,]" and the meals "consistently provide less [than fifteen percent] of calories from protein[.]" Plaintiff further alleged that "[d]espite knowing that it was not complying with the material terms of the [contract,]" Aramark "repeatedly generated reports reflecting that it was in compliance" and requested full payment pursuant to the terms of the

5

contract. As a result, Plaintiff alleged that "the State paid Aramark for services and goods that Aramark did not provide[.]"

**{16}** Based on the foregoing allegations, Plaintiff claimed that "Aramark knowingly presented a false and/or fraudulent claim for payment to the State"; that "Aramark knowingly made, used, or caused to be used, a false, misleading[,] and/or fraudulent record or statement to obtain support or approval for payment on a false and/or fraudulent claim"; and that the State was damaged as a result of Aramark's actions. Plaintiff requested a judgment in the State's favor, including an award of three times the amount of damages sustained by the State, a civil penalty for each violation of the Act, costs incurred in prosecuting the action, and attorney fees. The attorney general chose not to intervene.

**{17}** In July 2011, Aramark moved for summary judgment on the bases of claim preclusion and issue preclusion. In its motion for summary judgment, Aramark argued that "[t]he allegations in the present lawsuit are virtually identical to those of [the 2008 lawsuit] against Aramark" and that "Plaintiff should not be permitted to re[-]package the allegations from [the 2008 lawsuit] as a qui tam action and litigate a second lawsuit containing the same contentions." Aramark attached exhibits in support of its summary judgment motion, including Plaintiff's 2008 complaint, the district court's "findings and conclusions" from the 2008 lawsuit, and this Court's memorandum opinion affirming the district court's summary judgment as to Plaintiff's 2008 lawsuit. Aramark's arguments supporting summary judgment will be discussed, as necessary, later in this Opinion.

**{18}** On the same day that it filed its motion for summary judgment, Aramark also filed a motion to dismiss pursuant to Rule 1-012(B)(6) NMRA and Rule 1-009(B) NMRA. *See* Rule 1-012(B)(6) (permitting a party to file a motion defending against a claim based on the opposing party's "failure to state a claim upon which relief can be granted"); *see also* Rule 1-009(B) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). As grounds for dismissal, Aramark argued that Plaintiff's complaint failed to comply with Rule 1-009(B) in that it failed to specify the factual bases of the fraud allegations, failed to identify Aramark's alleged wrongdoing, and failed "to identify a single false claim for payment made to the State." Thus, it failed to present "a legally cogent theory of recovery" and should be dismissed.

**{19}** Alternatively, Aramark argued in its motion to dismiss that if the complaint was not dismissed entirely, it should be dismissed in part to preclude any claims arising before July 1, 2007, so as to comport with the constitutional prohibition against the application of ex post facto laws. As a basis for this alternative argument, Aramark noted that Plaintiff appeared to be alleging wrongful conduct that dated back to June 2004; however, the Act was codified on July 1, 2007.

**{20}** In March 2012, the district court held a hearing on Aramark's motions for summary judgment and dismissal. Following the hearing, the district court entered a written order of dismissal with prejudice. In the order, the district court stated that Aramark properly

established each of the elements required under the doctrines of claim preclusion and issue preclusion, and thus ordered that Plaintiff was barred from pursuing his claims in the present lawsuit. Accordingly, the district court granted Aramark's motion for summary judgment, and dismissed, with prejudice, all claims brought on behalf of Plaintiff, stating, however, that its order did not prejudice the State's ability to bring a related action based on the same facts. Further, the court dismissed with prejudice Plaintiff's claims that were based on conduct occurring before July 1, 2007—the effective date of the Act—because they would require retroactive application of the Act in violation of the prohibition against ex post facto laws. The court did not enter a ruling in regard to Aramark's Rule 1-012(B)(6) and Rule 1-009(B) arguments, indicating rather that it was taking that aspect of the motion to dismiss "under advisement." Plaintiff appeals from the court's order.

**{21}** On appeal, Plaintiff argues that the district court erred in granting summary judgment on the bases of claim and issue preclusion, respectively. He also argues that the court erred in dismissing the claims that accrued prior to July 1, 2007, arguing that the prohibition against ex post facto laws does not apply in this case. The parties do not claim that relevant facts are in dispute.

**{22}** We hold that the doctrines of claim preclusion and issue preclusion do not bar the present lawsuit and reverse the court's summary judgment. We affirm the court's order made pursuant to the prohibition against ex post facto laws, dismissing claims that were based on activity that occurred prior to July 1, 2007.

## DISCUSSION

### Standard of Review

**{23}** "When the facts are not in dispute, the preclusive effect of a prior judgment is a question of law reviewed de novo." *Rosette, Inc. v. United States Dep't of the Interior*, 2007-NMCA-136, ¶ 31, 142 N.M. 717, 169 P.3d 704. Additionally, in reviewing an appeal from summary judgment, where the "issues on appeal involve only questions of law, we review those questions de novo." *Id.* ¶ 16. Thus, as to all issues in this appeal, our review is de novo.

### Claim Preclusion

**{24}** The doctrine of claim preclusion "bars re[-]litigation of the same claim between the same parties or their privies when the first litigation resulted in a final judgment on the merits." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 137 P.3d 577 (internal quotation marks and citation omitted). "It treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action." 18 Wright et al., *supra*, § 4402, at 8-9 (internal quotation marks and citation omitted). A defendant claiming that the plaintiff's claim is barred under the doctrine of claim preclusion must demonstrate that the following four elements are met: (1) "the parties

7

must be the same or in privity[,]" (2) "the subject matter must be identical[,]" (3) "the capacity or character of persons for or against whom the claim is made must be the same[,]" and (4) "the same cause of action must be involved in both suits." *Deflon*, 2006-NMSC-025, ¶ 3 (internal quotation marks and citation omitted); *see Moffat v. Branch*, 2005-NMCA-103, ¶¶ 10-11, 138 N.M. 224, 118 P.3d 732 (stating that the defendant bears the burden of establishing claim preclusion by showing that each element is met).

**{25}** Plaintiff argues that the third and fourth elements of claim preclusion were not satisfied. We thus begin our discussion by considering whether "the capacity or character of persons for or against whom the claim is made" was the same in the 2008 lawsuit as in the present action. *Deflon*, 2006-NMSC-025, ¶ 3 (internal quotation marks and citation omitted).

**{26}** Plaintiff argues that the court erred in finding that his complaint was barred by claim preclusion because his capacity as an individual plaintiff in the 2008 lawsuit differed from his capacity as qui tam relator on behalf of the State in the present lawsuit. In support of this argument, Plaintiff cites *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 852 (7th Cir. 2009), in which the Seventh Circuit Court of Appeals held that an individual employment lawsuit did not bar a subsequent qui tam action under the federal False Claims Act.

**{27}** Aramark argues that rather than following *Lusby*, we should instead follow the lead of the Fifth Circuit Court of Appeals in *United States ex rel. Laird v. Lockheed Martin Engineering & Science Services Co.*, 336 F.3d 346 (5th Cir. 2003), *abrogated on other grounds by Rockwell International Corp. v. United States*, 549 U.S. 457 (2007). Aramark relies on *Laird* for its conclusion that the "identity of parties" element of claim preclusion was met where the plaintiff brought a wrongful discharge lawsuit, followed by a qui tam action, both of which stemmed from the same set of circumstances. *Id.* at 349-50, 358.

**{28}** Although *Laird* supports Aramark's argument that because Plaintiff was involved in both lawsuits, the "same party" element of claim preclusion is satisfied, Plaintiff does not argue differently, and therefore the "same parties" element is not before us in this appeal. *See id.* at 358 (stating that because the plaintiff was a party in interest in both actions, the "identity of parties" element was satisfied). Moreover, both *Laird*, upon which Aramark relies, and *Lusby*, upon which Plaintiff relies, support Plaintiff's argument that his capacity as qui tam relator on behalf of the State is different from his capacity as an individual in the 2008 lawsuit.

**{29}** In *Laird*, the court distinguished between the plaintiff's capacity in his wrongful discharge suit versus his capacity as a relator for the United States in the qui tam action by observing the distinct remedies and recovery sought and the plaintiff's motive in bringing the respective suits. 336 F.3d at 359-60. The *Laird* court observed that in his wrongful discharge suit, the plaintiff "sought general damages and lost wages, as well as mental anguish and exemplary damages, all in his personal capacity"; whereas, in his qui tam suit,

8

the plaintiff, in his capacity "as relator, sought set statutory penalties under the [False Claims Act] and pre- and post-judgment interest." *Id.* at 359. The court further noted that the plaintiff's "motivation in bringing his wrongful discharge suit . . . is different from his motivation for bringing a qui tam suit" in that in the wrongful discharge suit, the plaintiff "wished to be compensated or made whole following what he saw as a wrongful discharge that was personal"; whereas, in his qui tam suit, he sought to "recover from [the defendant] on behalf of the government and in the name of the government for alleged fraud on the government[.]" *Id.* at 359-60 (emphasis omitted). Based in part on the foregoing, the *Laird* court concluded that the plaintiff's qui tam action was not barred by the doctrine of claim preclusion. *Id.* at 360.

**{30}** The *Lusby* court followed the *Laird* court's lead, stating: "we join the fifth circuit in concluding that the resolution of personal employment litigation does not preclude a qui tam action, in which the relator acts as a representative of the public." *Lusby*, 570 F.3d at 852 (emphasis omitted). In the *Lusby* court's view, the importance of recognizing the different capacities of a qui tam plaintiff versus a private litigant stems from the need to protect the interests of the government. *Id.* That is, when the government chooses not to intervene in a qui tam action, it nevertheless remains a real party in interest because its financial interests are at stake, but those interests are represented exclusively by the qui tam plaintiff. *Id.*; *see United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934-35 (2009) ("The phrase, real party in interest, is a term of art . . . refer[ring] to an actor with a substantive right whose interests may be represented in litigation by another." (internal quotation marks omitted)). Thus, the *Lusby* court reasoned that "[i]t would be inappropriate to snuff out [the government's] interest just because a potential relator thoughtlessly omitted a qui tam claim from a personal suit." 570 F.3d at 852 (emphasis omitted). Moreover, the *Lusby* court reasoned, were a personal lawsuit held to preclude a qui tam suit on claim preclusion grounds, the government would be incapable of vindicating its interest by bringing a new qui tam suit, either on its own or through another relator because " 'the United States is bound by the judgment in all [False Claims Act] actions regardless of its participation in the case.' " *Id.* at 853 (quoting *Eisenstein*, 556 U.S. at 936).

**{31}** Applying the rationale of *Laird* and *Lusby* to the present case, we conclude that Plaintiff's capacity in the 2008 lawsuit differed from his capacity in the present lawsuit. As an individual plaintiff in the 2008 lawsuit, Plaintiff sought recovery as a result of alleged wrongful acts perpetrated by the defendants upon Plaintiff, personally. Specifically, he sought actual and punitive damages, on his own behalf, for the alleged personal injuries that he suffered, including having been hungry, malnourished, forced to rely upon family and friends for "food money," and having been prohibited from freely exercising his religion. Plaintiff's obvious motivation for bringing the 2008 lawsuit was to be compensated or made whole for what he saw as the defendants' failure or refusal to provide Plaintiff, personally, with a nutritionally adequate ovo lacto vegetarian diet in accordance with the contractual obligation to do so.

**{32}** In contrast, in his capacity as qui tam relator in the present lawsuit, Plaintiff sought,

9

on behalf of and in the name of the State, to recover damages sustained by the State as a result of its having allegedly "paid many millions of dollars to Aramark" based on Aramark's allegedly false claims. *Cf. Laird*, 336 F.3d at 360 (stating that in contrast to his wrongful discharge lawsuit, the plaintiff sought, in his qui tam action, to recover from the defendant "on behalf of the government and in the name of the government for alleged fraud on the government"). The State's interest in this lawsuit, which is represented exclusively by Plaintiff because the attorney general chose not to intervene, should not, to use the *Lusby* court's language, be "snuff[ed] out" simply because Plaintiff failed, in his 2008 lawsuit, to raise a qui tam claim. 570 F.3d at 852; *see Peterson*, 2010 WL 4621717, at *2 (noting that the plaintiff had failed to bring a qui tam claim).

**{33}**     In sum, Plaintiff's capacity in the two lawsuits differed. Therefore, the court erred in concluding that Aramark established each of the elements required under the doctrine of claim preclusion. Because the claim preclusion doctrine does not bar a subsequent lawsuit unless all four elements are met, we do not consider the parties' remaining claim preclusion arguments. *See Moffat*, 2005-NMCA-103, ¶¶ 10-11 (stating that claim preclusion requires the defendant to show that each element was satisfied). We reverse the court's order granting summary judgment on the basis of claim preclusion.

**Issue Preclusion**

**{34}**     The doctrine of "issue preclusion[] prevents a party from re-litigating ultimate facts or issues actually and necessarily decided in a prior suit." *Deflon*, 2006-NMSC-025, ¶ 13 (emphasis, internal quotation marks, and citation omitted). Its purpose "is to prevent endless re[-]litigation of the same issues under the guise of different causes of action." *Rosette, Inc.*, 2007-NMCA-136, ¶ 39 (internal quotation marks and citation omitted). Issue preclusion bars re-litigation of the same issue if each of the following four elements are met.

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Ideal v. Burlington Res. Oil & Gas Co.*, 2010-NMSC-022, ¶ 9, 148 N.M. 228, 233 P.3d 362 (internal quotation marks and citation omitted); *see DeLisle v. Avallone*, 1994-NMCA-012, ¶ 9, 117 N.M. 602, 874 P.2d 1266 (stating the elements differently and explaining that, in order for issue preclusion to apply, what was "actually litigated" and "necessarily determined" in the earlier lawsuit must be the "same ultimate issue or fact" at issue in the present lawsuit). "It is insufficient for the invocation of issue preclusion that some question of fact or law in a later suit was relevant to a prior adjudication between the parties; the contested issue must have been litigated and necessary to the judgment earlier rendered." 18 Wright et al., *supra*, § 4402, at 9 (internal quotation marks and citation omitted).

10

**{35}** Plaintiff does not dispute that he was a party to the 2008 lawsuit, and he concedes that both the 2008 lawsuit and the present lawsuit each concerned Aramark's provision of "poor quality meals." Nevertheless, Plaintiff argues that issue preclusion does not bar the present lawsuit because the "ultimate issues or facts" necessary for the consideration whether Aramark violated the Act were not determined by the court in the 2008 lawsuit. Aramark disagrees.

**{36}** According to Aramark, Plaintiff's allegations that "his meals did not comply with the State's contractual and policy requirements and that [Aramark] engaged in fraud in submitting invoices for those deficient meals were actually litigated" in the 2008 lawsuit. Aramark also argues that the issue whether it made any false statements or claims regarding such meals was actually litigated in the 2008 lawsuit. Further, as to whether the issues in the present lawsuit were necessarily determined, Aramark argues that in its order pertaining to the 2008 lawsuit the district court found, in relevant part, that Aramark's meals were nutritionally sufficient and that Aramark did not make any false statements. *See Ideal*, 2010-NMSC-022, ¶ 9 (stating the factors of issue preclusion, including that the issue was necessarily determined in the earlier lawsuit). As such, Aramark argues that "the issues in the present case were already determined in the 2008 lawsuit."

**{37}** To resolve the question whether the issues or facts in the present lawsuit were actually litigated and necessarily determined in the 2008 lawsuit, we review the elements required to prove the claims raised in the 2008 lawsuit. *Cf. Deflon*, 2006-NMSC-025, ¶ 16 (evaluating an issue preclusion argument by considering the elements of a claim in the plaintiff's earlier lawsuit to determine whether those in the later lawsuit required the same findings in order to succeed).

**{38}** Plaintiff's 2008 lawsuit raised four claims: (1) breach of duty, (2) fraud, (3) unfair practices, and (4) violation of the New Mexico Religious Freedom Restoration Act. The district court construed Plaintiff's breach of duty claim to be a claim that the defendants breached a duty to Plaintiff to provide a nutritionally adequate ovo lacto vegetarian diet. To prevail in his breach of duty claim, Plaintiff was required to establish that the defendants owed him a duty to provide a nutritionally adequate vegetarian diet, that the defendants breached that duty, and that the breach was the cause of Plaintiff's alleged malnourishment and other harm. *Cf. Ross v. City of Las Cruces*, 2010-NMCA-015, ¶ 10, 148 N.M. 81, 229 P.3d 1253 (setting out the elements of a negligence claim). The court observed, as a matter of undisputed material fact, that Plaintiff was not a qualified medical or nutritional expert. As such, the court granted summary judgment in favor of the defendants as to Plaintiff's breach of duty claim, concluding that Plaintiff's claims of "nutritional inadequacy and medical causation require[d] the testimony of a qualified medical expert."

**{39}** As to Plaintiff's fraud claim, the district court interpreted it to be a claim that the defendants made "untrue representations of fact to . . . [P]laintiff." Relying on *Saylor v. Valles*, 2003-NMCA-037, 133 N.M. 432, 63 P.3d 1152, for the elements of fraud, the court determined that Plaintiff had failed to provide evidence "that the defendants intentionally

11

made any misrepresentations of fact to him or that . . . [P]laintiff relied upon such misrepresentations to his detriment." *See id.* ¶ 21 (stating that a fraudulent misrepresentation claim "requires that the injured party show that the other party (1) made a misrepresentation of fact . . . (2) with the intent to deceive and to induce the injured party to act upon it, (3) and upon which the injured party actually and detrimentally relies").

**{40}**    As to Plaintiff's claim of unfair practices, the district court, relying on *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, 137 N.M. 524, 113 P.3d 347, stated that Plaintiff's "claim for unfair trade practices is without merit in the absence of evidence that the defendants made any untrue statements of material fact." In *Santa Fe Custom Shutters*, this Court observed that an unfair or deceptive trade practice is "any false or misleading oral or written statement . . . knowingly made in connection with the sale . . . of goods or services . . . by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person." *Id.* ¶ 14 (omissions in original) (internal quotation marks and citation omitted).  Also in *Santa Fe Custom Shutters*, we observed that the foregoing definition "contemplates a plaintiff who seeks or acquires goods or services and a defendant who provides goods or services." *Id.*  Thus, to prevail in his unfair practices claim, Plaintiff was required to show that he sought to acquire the defendants' goods and services and that the defendants knowingly made false or misleading statements to Plaintiff in connection with the sale of goods or services to him. *See id.*

**{41}**    Finally, as to Plaintiff's claim in the 2008 lawsuit that the defendants violated the New Mexico Religious Freedom Restoration Act, the district court determined that Plaintiff "fail[ed] to show that the defendants, whether as state actors or otherwise, have restricted . . . [P]laintiff's right to exercise his religion."  The Religious Freedom Restoration Act prohibits a government agency from restricting a person's free exercise of religion unless the restriction is one of general applicability, does not directly discriminate against religion, is essential to furthering a compelling government interest, and its application is the least restrictive means of furthering that interest.  Section 28-22-3.  Thus, in order to prevail on his claim that the defendants violated the Religious Freedom Restoration Act, Plaintiff would have had to prove that the defendants were a government agency that restricted his religion in a manner that was either not essential to furthering a compelling government interest or was not the least restrictive means of furthering the compelling government interest. *See id.*

**{42}**    In contrast to the foregoing claims raised in the 2008 lawsuit, in order to prevail in the present lawsuit, Plaintiff was required to prove the following three allegations:  (1) that "Aramark knowingly presented a false and/or fraudulent claim for payment to the State"; (2) that "Aramark knowingly made, used, or caused to be used, a false, misleading[,] and/or fraudulent record or statement to obtain support or approval for payment on a false and/or fraudulent claim"; and (3) that "[a]s a result of Aramark[']s actions, the State has been damaged[.]" *See* § 44-9-3(A)(1), (2) (stating the relevant prohibitions under the Act).

**{43}**    Aramark argues that the question whether it knowingly presented a false and/or

fraudulent claim for payment to the State was actually litigated and necessarily decided in the 2008 lawsuit. In support of this contention, Aramark points to the fact that the district court found no evidence that Aramark made any false representations of fact to Plaintiff and no evidence that it committed fraud or unfair trade practices. The district court's conclusions in the 2008 lawsuit regarding fraud and unfair trade practices do not support Aramark's issue preclusion argument.

{44}    In the 2008 lawsuit, the district court concluded that Aramark had not made any false representations of fact to Plaintiff. That conclusion formed a partial basis for the court's further conclusion that Plaintiff's fraud claim lacked merit. Nevertheless, whether Aramark made false representations of fact to Plaintiff, personally, is irrelevant in the present lawsuit, which solely concerns the question whether Aramark made false representations of fact to the State. Resolution of Plaintiff's claim in the 2008 lawsuit that he, personally, was defrauded by Aramark did not require actual litigation of, or a determination as to whether Aramark defrauded the State. Moreover, there is no indication from the court's order in the 2008 lawsuit that Plaintiff's unfair trade practices claim encompassed actual litigation or a necessary determination whether the State, rather than Plaintiff, was misled.

{45}    In sum, it seems obvious from the documents in the 2008 lawsuit, made part of the record in this case, that Plaintiff and the court focused exclusively on whether Plaintiff was personally defrauded or misled. As such, the relevant issue in this case——whether Aramark knowingly presented a false and/or fraudulent claim for payment to the State—is not precluded by the 2008 lawsuit. The court's determination to the contrary was made in error.

{46}    Aramark also argues that Plaintiff's "allegations that his meals did not comply with the State's contractual and policy requirements" were actually litigated and decided against Plaintiff in the 2008 lawsuit. In support of this point, Aramark states that the court, in the 2008 lawsuit, found that Plaintiff's meals "met the standards of a host of different organizations and was high in protein generally." In the 2008 lawsuit, the court did address whether Plaintiff's meals satisfied the relevant nutritional requirements of an ovo lacto vegetarian diet. But the district court's conclusion regarding the nutritional adequacy of Plaintiff's vegetarian meals did not involve an actual litigation or a necessary determination of the relevant issues in the present lawsuit.

{47}    What the court addressed, in the 2008 lawsuit, was the adequacy of *Plaintiff's* ovo lacto vegetarian meals, because Plaintiff's claims centered on allegations that *his* vegetarian meals were inadequate and that *he* was harmed as a result. Resolution of the claims in the 2008 lawsuit that were personal to Plaintiff's own dietary needs did not require or involve litigation of the question at issue in the present lawsuit—whether the meals that Aramark serves to the broad population of inmates in the Department's custody, including those inmates who are not entitled to a special religious diet, meet the contract's nutritional and quality standards.

{48}    Moreover, the court's resolution of Plaintiff's breach of duty claim in the 2008

13

lawsuit did not rest on any resolution of questions whether the meals served by Aramark met the nutritional and quality standards of the contract; rather, the court's summary judgment order as to that claim centered on the absence of expert medical testimony to prove medical causation. We see no basis in the court's order in the 2008 lawsuit from which to conclude that it considered the adequacy of any meals provided by Aramark beyond those that it served to Plaintiff. Nor do we see any basis in the court's order from which to conclude that issues concerning the quality of the eggs or the protein percentages of the meals served by Aramark and whether those values comported with the contract's requirements were actually litigated or necessarily decided in the 2008 case.

**{49}** In sum, notwithstanding the fact that the 2008 lawsuit and the present lawsuit both involve some underlying fact questions regarding the adequacy of Aramark's meals and allegedly false statements about those meals, that commonality is an insufficient basis on which to apply the doctrine of issue preclusion. *See* 18 Wright et al., *supra*, § 4402, at 9 (stating that "[i]t is insufficient for the invocation of issue preclusion that some question of fact or law in a later suit was relevant to a prior adjudication between the parties" (internal quotation marks and citation omitted)). The questions relevant to Plaintiff's present lawsuit, namely, whether Aramark knowingly presented a false and/or fraudulent claim for payment to the State for the meals that it provided to the broad population of inmates in the Department's custody, whether Aramark knowingly misled the State regarding the adequacy of the meals provided to inmates to obtain payment pursuant to the contract, and whether the State was damaged as a result, were neither litigated nor necessarily decided in the 2008 lawsuit. *See id.* (explaining that "the contested issue must have been litigated and necessary to the judgment earlier rendered" for the doctrine of issue preclusion to apply (internal quotation marks and citation omitted)). Therefore, the court erred in granting summary judgment on the basis of issue preclusion, and its judgment in that regard is reversed.

**Retroactive Application of the Act**

**{50}** Plaintiff's final argument is that the court erred in dismissing his claims to the extent that they sought relief under the Act for conduct that occurred before July 1, 2007. The court's dismissal in that regard was premised on the fact that claims that accrued prior to the enactment of the Act would require retroactive application of the Act and would, therefore, violate federal and state prohibitions against ex post facto laws. As Plaintiff acknowledges in his brief in chief, this Court has held that retroactive application of the Act would violate the prohibition against ex post facto laws. *See Foy*, 2013-NMCA-043, ¶ 52. Thus, Plaintiff's decision to raise this issue in his brief in chief was, in Plaintiff's words, an attempt "to preserve this argument in the event that the Supreme Court decides to consider the issue." Presently, the Supreme Court has granted certiorari in *Foy*, but has not yet issued an opinion in the matter. *See* 300 P.3d 1181. Accordingly, pursuant to our holding in *Foy*, 2013-NMCA-043, ¶ 52, we affirm the district court's dismissal of any claims under the Act that accrued prior to July 1, 2007.

**CONCLUSION**

**{51}** We reverse the district court's summary judgment on the bases of claim preclusion and issue preclusion. The court's dismissal of Plaintiff's claims that were based on conduct that occurred prior to July 1, 2007, is affirmed pursuant to our holding in *Foy*.

**{52}  IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**

**Topic Index for *State ex rel. Peterson v. Aramark Corr. Servs., L.L.C.*, No. 32,128**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Collateral Estoppel
Summary Judgment
Res Judicata

**CIVIL RIGHTS**
Prison Conditions

**CONSTITUTIONAL LAW**
Freedom of Religion

**MISCELLANEOUS STATUTES**
Fraud Against Taxpayers Act

**STATUTES**
Retroactivity