FILED
United States Court of Appeals
Tenth Circuit

January 12, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DONNA EVERHART; HARLEY
EVERHART, individually and as next of
friend for S. E. and S. E., minor children,

    Plaintiffs - Appellants,

v.

NEW MEXICO CHILDREN YOUTH
AND FAMILY SERVICES; DANA
BECKER, employee and supervisor for
Children, Youth and Families Department;
EVGENIA VALDERAZ, in her official
capacity and individual capacity,

    Defendants - Appellees.

No. 20-2078
(D.C. No. 2:17-CV-01134-RB-CG)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **MURPHY**, and **ROSSMAN**, Circuit Judges.
_____

After approximately ten years of legal proceedings, a New Mexico court

awarded custody over Donna and Harley Everhart's youngest child, S.E. Girl, to an

adoptive family. The proceedings started after the Everharts' six-year-old son,

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

S.E. Boy, began acting out sexually in school and reported that his older brother, H.E. Boy, had shared pornography with him and later raped him. Seven years into the state court proceedings, the Everharts filed an action in federal court, alleging, in part, that the Children Youth and Family Department ("CYFD"), CYFD supervisor Dana Becker, and CYFD case worker Evgenia Valderaz had violated their Fourteenth Amendment rights to familial association and due process. These defendants moved for summary judgment; meanwhile, the Everharts moved for issue preclusion on factual matters allegedly resolved during the state court proceedings. A federal magistrate judge recommended denying the Motion for Issue Preclusion and granting the Motion for Summary Judgment. The Everharts filed an objection to the magistrate judge's recommendations, which addressed some but not all of the reasoning advanced by the magistrate judge. The district court adopted the magistrate judge's recommendations, denying the Motion for Issue Preclusion and granting the Motion for Summary Judgment.

For several reasons, we affirm. First, as to the Motion for Issue Preclusion, the Everharts failed to adequately object to the magistrate judge's conclusion that there was not privity between parties in the state and federal proceedings and, even if the Everharts had raised a proper objection, they could not have demonstrated privity relative to Ms. Becker and Ms. Valderaz. Second, the Everharts failed to raise any objection to the grant of summary judgment as to Ms. Valderaz. Third, the Everharts failed to advance facts capable of supporting a constitutional violation by Ms. Becker

2

or CYFD. Fourth, where the Everharts have not advanced facts supporting a constitutional violation, they cannot proceed on a policy-based claim against CYFD.

## I.    BACKGROUND

Although there was an overlap between the conclusion of the state court proceedings and the commencement of the federal court proceedings, we first outline the state court proceedings in their entirety, including the allegations giving rise to those proceedings. Then we discuss the federal court proceedings.

### A.    State Court Proceedings

As of fall 2009, the Everharts had three minor children in their household: (1) H.E. Boy, age seventeen; (2) S.E. Boy, age six and in first grade; and (3) S.E. Girl, age one. S.E. Boy began acting out sexually at school, including kissing and touching female classmates. The school principal met with Ms. Everhart, who admitted knowing that when the Everharts were not home, H.E. Boy was sharing pornography, including "incestuous pornography," with S.E. Boy. ROA Vol. II at 32. When the school principal suggested the Everharts restrict H.E. Boy's access to pornography by taking the computer keyboard away when H.E. Boy was supervising S.E. Boy, Ms. Everhart responded "why would we do that." *Id.*

In spring 2010, S.E. Boy reported to his principal that H.E. Boy "puts his pee-pee in my butthole." *Id.* at 33. Police and CYFD investigated the allegation. Mr. Everhart attributed S.E. Boy's allegation to a dispute at home over an iPod and declined to take steps to prevent H.E. Boy from having direct, unsupervised contact with S.E. Boy and S.E. Girl. H.E. Boy, however, confessed to police that he had

3

"sexually penetrat[ed]" S.E. Boy.[1] ROA Vol. I at 275. A sexual assault nurse performed a sexual assault examination on S.E. Boy, at which Ms. Everhart was present. During the examination, S.E. Boy engaged in a series of sexual behaviors. And, according to the nurse, when S.E. Boy began masturbating, Ms. Everhart "nodded her head with approval" and commented about the size of S.E. Boy's penis, stating "isn't he hung."[2] ROA Vol. II at 36. S.E. Boy also told the sexual assault nurse that "we have taken pictures of privates, and we print them off upstairs," seemingly a reference to the Everharts taking nude pictures of at least S.E. Boy. ROA Vol. I at 276; *see also* ROA Vol. II at 38 (S.E. Boy later telling a social worker that his mother and father took pictures of him naked).

On June 11, 2010, the City of Hobbs Police Department executed a search warrant at the Everharts' home, finding Ms. Everhart, H.E. Boy, S.E. Boy, and S.E. Girl in the home and seizing a computer from the Everharts' residence. CYFD removed S.E. Boy and S.E. Girl from the Everharts' home. CYFD filed an abuse and neglect petition against the Everharts, alleging the Everharts failed to supervise and protect their children. The Everharts admitted the allegations in the petition and

---

[1] Subsequent to CYFD commencing the state court proceedings against the Everharts, H.E. Boy pleaded guilty to criminal charges related to his sexual offenses against S.E. Boy and was sentenced as a juvenile offender.

[2] In the state court proceeding, Ms. Everhart denied that she had this response and made this statement. Recognizing this denial creates a dispute of fact regarding Ms. Everhart's response but not regarding what the nurse reported, we include this information not for its truth but to outline the evidence before Ms. Becker and CYFD during the state court proceedings.

pleaded no contest. The state trial court ordered S.E. Boy and S.E. Girl placed in the legal and physical custody of CYFD. CYFD initially presented a permanency plan of reunification and the Everharts were permitted to have supervised visits with S.E. Boy and S.E. Girl.

A search of the computer seized from the Everharts' residence, however, revealed additional disturbing evidence regarding the Everharts' parental suitability. Specifically, a forensic analysis of the computer showed the computer contained over 1,000 pornographic images, including several images authorities identified as suspected child pornography.[3] Further, although authorities could not positively conclude who had accessed the suspected child pornography images, authorities connected the computer log-in account containing the images to Mr. Everhart, as the account also contained Mr. Everhart's work files. In light of this discovery, the state trial court terminated the Everharts' supervised visits. Further, a social worker interviewed S.E. Boy, during which S.E. Boy revealed (1) "he has watched sex on T.V., and on the computer with his mother and father"; (2) he learned "'it's okay for kids to have sex with adults as long as they (the kids) say yes'"; and (3) he "'put [his] private on [S.E. Girl's] butt'" and wanted to "'teach his sister about sex.'" ROA Vol. II at 38, 71–72 (quoting S.E. Boy). S.E. Boy also reiterated his allegation that "his mother and father took pictures of him naked." *Id.* at 38.

---

[3] The images were identified as suspected or possible child pornography and not as identifiable images of child pornography because the images on the computer did not match any of the images of child pornography in the New Mexico Center for Missing and Exploited Children database.

Accounting for this new information, from July 2011 through December 2013, CYFD's permanency plan for S.E. Boy and S.E. Girl fluctuated between reunification and adoption with the termination of the Everharts' parental rights. In December 2013, CYFD settled on a permanency plan of adoption with the termination of the Everharts' parental rights. In 2015, the state trial court issued an order terminating the Everharts' parental rights as to S.E. Girl. The state trial court based its termination decision on a finding of "presumptive abandonment." *New Mexico ex rel. Children, Youth & Families Dep't v. Donna E.*, 406 P.3d 1033, 1035 (N.M. Ct. App. 2017). On appeal, the New Mexico Court of Appeals vacated the state trial court's termination of the Everharts' parental rights as to S.E. Girl, concluding there was not adequate record support for the conclusion the Everharts had presumptively abandoned S.E. Girl. *Id.* at 1044–47.

In April 2018, the state trial court held a remand hearing regarding what was in the best interest of S.E. Girl. In August 2018, the state trial court issued an order concluding that, based on the Everharts' course of conduct, moral delinquency, and inability to provide care and protection for S.E. Girl, it was in S.E. Girl's best interest to award custody of S.E. Girl to an adoptive family with whom S.E. Girl had bonded. This time, in December 2019, the New Mexico Court of Appeals affirmed the state trial court's order as to S.E. Girl. The Everharts filed a petition for a writ of certiorari with the Supreme Court of the State of New Mexico, which that court denied on March 31, 2020, thus bringing the state court proceedings to a close.

6

### B.    Federal Court Proceedings

In November 2017, following the New Mexico Court of Appeals's initial vacatur of the termination of their parental rights over S.E. Girl, but before the remand hearing, the Everharts commenced this federal action. Through a Second Amended Complaint, the Everharts advanced claims under 42 U.S.C. § 1983 for deprivation of the Fourteenth Amendment rights to familial association and procedural due process against (1) CYFD; (2) Ms. Becker, the CYFD supervisor assigned to the Everharts' case; and (3) Ms. Valderaz, a CYFD case worker.[4] CYFD, Ms. Becker, and Ms. Valderaz filed an answer to the Everharts' Second Amended Complaint.

At the motion practice stage, the Everharts filed a Motion for Issue Preclusion; meanwhile, CYFD, Ms. Becker, and Ms. Valderaz filed a Motion for Summary Judgment. The district judge referred the motions to a magistrate judge for proposed findings of facts and recommended dispositions. The magistrate judge recommended denying the Everharts' Motion for Issue Preclusion and granting CYFD's, Ms. Becker's, and Ms. Valderaz's Motion for Summary Judgment. The Everharts objected to the magistrate judge's findings and recommendations, contesting some, but not all, of the magistrate judge's reasoning. The district court adopted the magistrate judge's findings and recommendations.

---

[4] The Everharts' initial complaint also named two police detectives, the City of Hobbs, and the City of Hobbs Police Department as defendants. The Everharts reached a settlement agreement with these defendants.

The Everharts filed a notice of appeal from the district court's order. At the time of the notice of appeal, the Everharts had reached a settlement with the City of Hobbs, but the district court had not entered a final judgment as to the City of Hobbs. This court alerted the parties of a potential jurisdictional defect as a result of the pending claim against the City of Hobbs. The Everharts returned to district court, and the district court entered a final order resolving the claims against the City of Hobbs. The Everharts did not, thereafter, file a new notice of appeal.

## II.    JURISDICTION

Two jurisdictional matters warrant brief discussion. First, "[a]s a general matter, the courts of appeal have jurisdiction only to review the 'final decisions' of district courts." *Miller v. Basic Research, LLC*, 750 F.3d 1173, 1175 (10th Cir. 2014) (quoting 28 U.S.C. § 1291). "A final judgment is one that terminates all matters as to all parties and causes of action." *Utah v. Norton*, 396 F.3d 1281, 1286 (10th Cir. 2005) (internal quotation marks omitted). Because the Everharts' claims against the City of Hobbs remained pending when the district court entered its order denying their Motion for Issue Preclusion and granting summary judgment to CYFD, Ms. Becker, and Ms. Valderaz, the order appealed was not a final judgment.

However, "an otherwise nonfinal decision becomes final and appealable if the district court adjudicates all remaining claims against all remaining parties before the appellate court acts to dismiss the appeal . . . for lack of jurisdiction." *Harbert v. Healthcare Servs. Grp., Inc.*, 391 F.3d 1140, 1146 (10th Cir. 2004). Thus, upon the district court entering its order as to the City of Hobbs, its earlier order denying the

Motion for Issue Preclusion and granting summary judgment became an appealable order. And our case law holds that an appellant need not file a new notice of appeal once finality occurs so long as the original, premature appeal remains pending. *See id.* ("The district court's nonfinal decision therefore became final as a result of the post-appeal proceedings in the district court. We hold that the notice of appeal filed in this case was effective to confer appellate jurisdiction over the district court's . . . Order."). Therefore, the absence of a new notice of appeal filed following the final resolution of the Everharts' action as against the City of Hobbs does not deprive this court of jurisdiction over the appeal.

Second, CYFD, Ms. Becker, and Ms. Valderaz argue we lack jurisdiction over the district court's denial of the Everharts' Motion for Issue Preclusion. CYFD, Ms. Becker, and Ms. Valderaz are correct to the extent they assert a ruling denying issue preclusion does not resolve any claim against any party, no less all claims against all parties. But what CYFD, Ms. Becker, and Ms. Valderaz disregard is that once a final judgment enters, an appellate court may "review all stages of the proceeding that effectively may be reviewed and corrected." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). And we can effectively review the district court's denial of the Motion for Issue Preclusion. *Assuming* the Everharts were correct that the district court erred in denying their motion, we could reverse the denial of their motion, vacate the grant of summary judgment, and remand for the district court to reconsider summary judgment after application of principles of issue

9

preclusion. Accordingly, we have appellate jurisdiction to review the district court's

denial of the Everharts' Motion for Issue Preclusion

### III.     DISCUSSION

First, we discuss the requirement that a party advance objections to a

magistrate judge's findings and recommendations or be bound by the firm waiver

rule. Second, we consider the denial of the Everharts' Motion for Issue Preclusion.

Third, we analyze the grant of summary judgment to CYFD, Ms. Becker, and

Ms. Valderaz.

#### *A.     Firm Waiver Rule*

We have "adopted a firm waiver rule under which a party who fails to make a

timely objection to the magistrate judge's findings and recommendations waives

appellate review of both factual and legal questions." *Morales-Fernandez v. INS*, 418

F.3d 1116, 1119 (10th Cir. 2005). "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for

de novo review by the district court or for appellate review." *United States v. One*

*Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996). Thus, where a litigant

objects to some findings or recommendations by a magistrate judge but fails to object

to other findings or recommendations, the litigant waives appellate review as to the

unobjected to findings and recommendations. *Port City Props. v. Union Pac. R.R.*

*Co.*, 518 F.3d 1186, 1190 n.1 (10th Cir. 2008). Finally, the firm waiver rule applies

even where, despite the absence of a timely objection, a district court undertakes

review of a finding or recommendation offered by a magistrate judge. *Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999).

### B.    Motion for Issue Preclusion

We review the "legal question of whether issue preclusion bars the relitigation of [an] issue . . . de novo." *Bell v. Dillard Dep't Stores, Inc.*, 85 F.3d 1451, 1453 (10th Cir. 1996); *see also Guttman v. Khalsa*, 669 F.3d 1101, 1109 (10th Cir. 2012) ("We review de novo the district court's application of the doctrine of collateral estoppel, which is also known as issue preclusion."). It has long been settled in the § 1983 context "that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warrant City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The Everharts seek to rely upon a New Mexico state court decision such that New Mexico issue preclusion law governs.

> Under New Mexico law, issue preclusion applies to foreclose relitigation if:
>
> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation

*Ideal v Burlington Res. Oil & Gas Co. LP*, 233 P.3d 362, 365–66 (N.M. 2010) (quoting *Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 850 P.2d 996, 1000 (N.M. 1993)).[5]

---

[5] New Mexico Court of Appeals' decisions, prior to *Ideal v. Burlington Resources Oil & Gas Co. LP*, 233 P.3d 362 (N.M. 2010), state the first element slightly differently and indicate that the New Mexico Supreme Court adopted a more flexible, "modern" approach that "dispens[ed] with the 'same parties' requirement"

Relative to the first element, "the doctrine of offensive collateral estoppel may be applied when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully regardless of whether plaintiff was privy to the prior action." *Silva v. State*, 745 P.2d 380, 384 (N.M. 1987). However, a party may use issue preclusion offensively only "when the court deems it fundamentally fair to the parties." *Cherpelis v. Cherpelis*, 914 P.2d 637, 641 (N.M. Ct. App. 1996). Relative to the fourth element, an issue is "necessarily determined" if it is resolved through a judgment that has become final. *State ex rel. Martinez v. Kerr-McGee Corp.*, 898 P.2d 1256, 1260 (N.M. Ct. App. 1995).

The Everharts moved to preclude relitigation on seventy-three items they contended "[t]he Fifth Judicial District Court and the New Mexico Court of Appeals in Cause [sic] Number D-506-JQ-2010-15-C ha[d] determined." ROA Vol. I at 181. In October 2019, when the Everharts moved for issue preclusion, the Everharts' appeal of the state trial court's order awarding custody over S.E. Girl to an adoptive family pended before the New Mexico Court of Appeals. On March 10, 2020, three weeks before the Supreme Court of the State of New Mexico denied the Everharts'

---

by allowing "privity" with a party from an earlier litigation to satisfy the first element. *Reeves v. Wimberly*, 755 P.2d 75, 78 (N.M. Ct. App. 1988) (citing *Silva v. State*, 745 P.2d 380, 384 (N.M. 1987)). While in *Reeves* the statement about privity of parties satisfying the first element is consistent with recent decisions by the New Mexico Court of Appeals, *see e.g., Larsen v. Farmington Mun. Schs.*, 242 P.3d 493, 496 (N.M. Ct. App. 2010), *Ideal* is the most recent New Mexico Supreme Court case we located that announces the elements of issue preclusion. Nonetheless, because the Everharts have made no effort to satisfy the more flexible privity threshold, we proceed under the assumption that privity of parties can satisfy the first element.

petition for a writ of certiorari, the magistrate judge issued her findings and

recommendations. The magistrate judge recommended denying the Everharts'

Motion for Issue Preclusion because (1) the state court action was not final where the

writ of certiorari pended, and (2) the Everharts had not established that Ms. Becker

and Ms. Valderaz were parties to the state action or in privity with CYFD.

The Everharts' objection to the magistrate judge's finding contained a

boilerplate assertion that they satisfied the four elements for issue preclusion:

> The Plaintiffs under New Mexico Law have demonstrated the four (4.)
> elements of *Issue Preclusion*, (1.) that being the Parties in the current
> action, were the same and in privity with the Parties in the current
> action; (2.) The subject matter of the two (2.) actions are different;
> (3.) the ultimate facts were actually litigated and; (4.) the facts were
> determined by the Court.

*Id.* at 410. And the Everharts contended the ongoing state proceedings did not

deprive the state trial court's ruling of finality because the ongoing proceedings "only

adresse[d] the issues of termination, and what is in the best interest of the minor

[c]hildren." *Id.* But the Everharts neither explained how Ms. Becker and

Ms. Valderaz were in privity with CYFD, nor cited any case law for this proposition

regarding privity. Nor did they offer any support for the proposition that a judgment

could be final during the pendency of an appeal or alert the district court that the

Supreme Court of the State of New Mexico had denied their petition for certiorari.

*See id.* at 409–10.

The district court adopted the magistrate judge's recommended denial of the

Motion for Issue Preclusion. The district court faulted the Everharts for not following

13

the local rules and for not including record citations and citations to authority in support of their motion or their objections to the magistrate judge's findings and recommendations. The district court next concluded the Everharts failed to adequately object to the magistrate judge's conclusion that Ms. Becker and Ms. Valderaz were not in privity with CYFD. And, based on this deficiency, the district court determined it was unnecessary to address the merits of the Everharts' other objections.

For three reasons, we affirm the district court's denial of the Everharts' Motion for Issue Preclusion. First, specific to issue preclusion against Ms. Becker and Ms. Valderaz, the Everharts failed to advance a sufficient and specific objection to the magistrate judge's conclusion that these two defendants were not in privity with CYFD. Accordingly, the firm waiver rule precludes appellate review of the denial of the Everharts' Motion for Issue Preclusion as to Ms. Becker and Ms. Valderaz. Second, on appeal, the Everharts do not address either of the district court's bases for denying their Motion for Issue Preclusion—that they did not follow the local rules and did not adequately object to the magistrate's reasoning regarding the lack of privity. This omission on appeal is sufficient to affirm the district court's denial of the motion. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue."). Third, relative to Ms. Becker and Ms. Valderaz in their individual capacities, even if the Everharts had raised and properly pursued an objection to the magistrate judge's conclusion on privity, such an argument could not

14

prevail. Ms. Becker and Ms. Valderaz were not parties to the state custody proceedings. And "privity does not exist where an initial lawsuit is brought against an employer and a second lawsuit is then brought against an employee acting in his or her individual capacity." *Deflon v. Sawyers*, 137 P.3d 577, 640 (N.M. 2006). For these three reasons, we affirm the denial of the Everharts' Motion for Issue Preclusion.

### C. *Motion for Summary Judgment*

We start by stating the applicable standard of review before turning to the standard governing the qualified immunity defense advanced by Ms. Becker.[6] Then we analyze whether the Everharts advanced facts capable of supporting a constitutional violation against CYFD or Ms. Becker and overcoming Ms. Becker's qualified immunity defense. Finally, we address the Everharts' policy-based claim against CYFD.

### 1. Standard of Review

We review the district court's rulings on summary judgment de novo, applying the same standard as the district court. *See Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to

---

[6] Ms. Valderaz also advanced a qualified immunity defense. However, as noted by the district court, the Everharts did not raise any objection to the magistrate judge's recommended grant of summary judgment in Ms. Valderaz's favor. Applying the firm waiver rule, we affirm the district court's grant of summary judgment in favor of Ms. Valderaz in her individual capacity.

15

judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

On appeal, we "examine the record and all reasonable inferences that might be drawn

from it in the light most favorable to the non-moving party." *Merrifield v. Bd. of

Cnty. Comm'rs*, 654 F.3d 1073, 1077 (10th Cir. 2011) (quotation marks omitted).

## 2.    Qualified Immunity Standard

To overcome a qualified immunity defense, "the onus is on the plaintiff to

demonstrate '(1) that the official violated a statutory or constitutional right, *and*

(2) that the right was clearly established at the time of the challenged conduct.'"

*Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*,

563 U.S. 731, 735 (2011)). As the plaintiff must satisfy both prongs of this analysis,

a court may address the prongs in any order. *Id.* "In order for a constitutional right to

be clearly established, the contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right." *Id.* at

1004–05 (internal quotation marks omitted). "A plaintiff may satisfy this standard by

identifying an on-point Supreme Court or published Tenth Circuit decision;

alternatively, the clearly established weight of authority from other courts must have

found the law to be as the plaintiff maintains." *Id.* at 1005 (internal quotation marks

omitted). While "the Supreme Court has 'repeatedly told courts not to define clearly

established law at a high level of generality,'" it has also explained that "'officials

can still be on notice that their conduct violates established law even in novel factual

circumstances.'" *Id.* (first quoting *al-Kidd*, 563 U.S. at 742, then quoting *Cortez v.

16

*McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc)). Ultimately, though, this court must assess whether "existing precedent [has] placed the statutory or constitutional question beyond debate." *Id.* (quoting *al-Kidd*, 563 U.S. at 741).

**3.    Fourteenth Amendment Deprivation of Right to Familial Association**

Within the context of the Fourteenth Amendment, one of the "oldest of the fundamental liberty interests recognized by [the Supreme] Court" is "the interest of parents in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). This "includes the right of parents to 'establish a home and bring up children.'" *Id.* (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). In accord with this, "[t]he government's forced separation of parent from child, even for a short time, represents a serious impingement on a parent's right to familial association." *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (internal quotation marks omitted). But "[r]egardless of the intensity of a familial association claim, our cases establish that *the right is not absolute*" and "must be weighed against the state's interest in protecting a child's health and safety in order to determine whether the state actors unduly burdened that right in a given case." *Id.* at 1196 (emphasis added) (citing *Youngberg v. Romeo*, 457 U.S. 307, 320–21 (1982)). Thus,

> [t]o state a claim for the deprivation of the right of familial association, [plaintiffs must demonstrate] that (1) defendants intended to deprive them of their protected relationship with their [child] and that (2) balancing [their] interest in their protected relationship with [their child] against the state's interest in [the child's] health and safety, defendants either unduly burdened plaintiffs' protected relationship or effected an unwarranted intrusion into that relationship.

*Id*. (citations omitted).

17

Viewing the facts in the light most favorable to the Everharts, the Everharts have not established a constitutional violation. The record is replete with evidence that the Everharts' continued custody over and involvement in the lives of their children presented grave danger to the physical and mental wellbeing of S.E. Boy and S.E. Girl. The Everharts displayed a disturbing and continual disinterest in regulating the sexual proclivities of H.E. Boy toward S.E. Boy, allowing H.E. Boy's actions to escalate to the rape of S.E. Boy. Furthermore, the uncovering of possible images of child pornography from a computer seized from the Everharts' residence, Ms. Everhart's alleged behavior during the sexual assault examination, and S.E. Boy's allegations that the Everharts took nude pictures of him and exposed him to sexually explicit materials provide a strong basis for Ms. Becker's and CYFD's decision to seek the termination of parental rights.[7] Overall, given the evidence available to CYFD and Ms. Becker, the state's interest in pursuing removal and termination easily outweighed the Everharts' interest in maintaining a relationship with S.E. Boy and S.E. Girl.

However, even if the Everharts could establish a constitutional violation, none of the cases identified by the Everharts would satisfy the "clearly established" requirement for overcoming Ms. Becker's qualified immunity defense. The Everharts

---

[7] While the truth of these allegations may be in dispute, the existence of the allegations and some evidence supporting the allegations is not. Thus, while it was ultimately up to the state courts to adjudicate the truth of the allegations and the Everharts' parental fitness, the existence of some evidence substantiating these very serious allegations supports the state's interest in intervening and the actions taken by CYFD and Ms. Becker.

appear to cite four cases in their appellate brief. First, the Everharts cite *Thomas*.

Although *Thomas* involved a claim involving the interference with familial

association, it arose within the context of the commitment of a child for medical care

over a parent's objection. *Id.* at 1196. The facts of *Thomas*, quite obviously, have

little relationship to the removal of children from a home in the face of the

allegations against the Everharts. Second, the Everharts cite *PJ ex rel. Jensen v.*

*Wagner*, 603 F.3d 1182 (10th Cir. 2010). *Jensen*, however, involved a child who was

*never* removed from the parents' home, and this court held there was *no*

constitutional violation. *Id.* at 1199. Accordingly, *Jensen* was incapable of placing

Ms. Becker on notice of when a state official violates the right of familial

association. Third, the Everharts cite *Graves v. Thomas*, 450 F.3d 1215 (10th Cir.

2006). *Graves* is further afield than *Jensen* as it involved a § 1983 claim alleging a

Fourth Amendment violation based on an officer using excessive speed when

pursuing a fleeing suspect. *Id.* at 1217. Fourth, and finally, the Everharts cite *Malik v.*

*Arapahoe County & Social Services*, 191 F.3d 1306 (10th Cir. 1999). Although

mildly on point, *Malik* did not rest on facts sufficiently akin to those of this case so

as to satisfy the "clearly established" prong. To be sure, *Malik* involved a holding

that a state official violated a parent's right to familial association. *Id.* at 1315–16.

But *Malik* arose from a state official making misrepresentations and omitting facts

when obtaining a court order removing the child from the parental home. *Id.* at 1316.

The Everharts do not point to any record evidence that Ms. Becker made intentional

misrepresentations during the state court proceedings. Accordingly, where none of

19

the cases cited by the Everharts involve facts sufficiently similar to the facts of this case and Ms. Becker's conduct was not so obviously unconstitutional so as to place its legality beyond debate, the Everharts also fail to sustain their burden under the "clearly established" prong of the qualified immunity analysis. Therefore, we affirm the district court's grant of summary judgment on the Everharts' familial association claim.

**4.      Fourteenth Amendment Procedural Due Process**

"An expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983)). "Process is not an end in itself, . . . [i]ts constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Id.* (quoting *Olim*, 461 U.S. at 250). "The core of due process is the right to notice and a meaningful opportunity to be heard." *Id.* (quoting *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)). It is also clearly established that "a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures." *Malik*, 191 F.3d at 1315.

For two reasons, the Everharts have not advanced evidence capable of supporting a constitutional violation. First, the record makes clear that the New Mexico courts provided them more than adequate notice and an opportunity to be heard. The initial proceeding solidifying the removal of S.E. Boy and S.E. Girl occurred through an abuse and neglect petition to which the Everharts admitted the

20

facts and pleaded no contest. The state trial court held a plethora of hearings during the course of the proceedings, including eleven hearings over the last three years of the state proceedings. Further, the Everharts received the process of two appeals to the New Mexico Court of Appeals and the opportunity to petition the Supreme Court for the State of New Mexico for a writ of certiorari. Second, to the extent the Everharts hinge their claim on CYFD and Ms. Becker needing to work with them on a reunification plan, the Everharts cite no case law placing such a due process requirement on a state agency or an individual supervisor within the agency. *See* Fed. R. App. P. 28(a)(8)(A) (requiring "citations to the authorities" that support an appellant's contentions). Nor do we hold one exists where, under the facts of this case as discussed relative to the familial association claim, the state's interests in protecting the welfare of minor children easily outweighed the Everharts' familial association interest. Accordingly, we affirm the district court's grant of summary judgment on the Everharts' due process claim.

**5.    Policy-Based Claim against CYFD**

In addition to naming CYFD as a defendant in the familial association and due process claims, the Everharts contend in their opening brief to this court that CYFD has adopted an unconstitutional policy that resulted in the removal of S.E. Boy and S.E. Girl, as well as the continued impingement of their legal custody over these two children. As an initial matter, we question whether the Everharts adequately alleged a policy-based claim where the word "policy" does not appear anywhere in their Second Amended Complaint. But, assuming the Everharts properly alleged a policy-

21

based claim, to advance a § 1983 claim against a governmental entity based on the entity's policy, a plaintiff must prove (1) a governmental employee "committed a constitutional violation," and (2) the governmental "policy or custom was the moving force behind the constitutional deprivation," *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). As a result of the first requirement, a governmental entity "cannot be held liable under section 1983 for the acts of an employee if . . . [the] employee committed no constitutional violation." *Id.* (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)).

Based on our earlier conclusions that the Everharts failed to advance evidence capable of supporting the proposition that Ms. Becker violated their constitutional rights, the policy-based claim against CYFD necessarily fails. Accordingly, we affirm the district court's grant of summary judgment in favor of CYFD on any policy-based claim raised by the Everharts.

## IV.    CONCLUSION

We AFFIRM the district court's denial of the Everharts' Motion for Issue Preclusion and its grant of summary judgment in favor of CYFD, Ms. Becker, and Ms. Valderaz.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

22